**Richmond.**

Jones v. Commonwealth.

November 13th, 1890.

1. CRIMINAL PROCEEDINGS.—*Malicious Wounding — Indictment.*—Indictment charging that accused made an assault with a stone, and did feloniously, maliciously and unlawfully beat, wound, ill-treat and cause bodily injury, etc., sufficiently conforms to Code, section 3671.
2. IDEM.—*Venire Facias—Recital—Waiver.*—This writ is an indispensable process, and omission to direct it when required, is error apparent of record, and cannot be cured by any presumption or waiver, and advantage may be taken thereof by motion in arrest of judgment, or for the first time, by writ of error.
3. IDEM.—*Construction of statutes.*—Code, section 3156, to cure irregularity in writ of *venire facias*, etc., applies only to civil and misdemeanor cases, and Act of January, 1888 (Acts 1887-8, p. 18), does not apply to a felony case where there is no *venire facias* at all.
4. IDEM—*Defective verdict.*—Where on such indictment the verdict finds the prisoner guilty of malicious assault, without saying with what intent the assault was committed, the verdict should be set aside on motion, as irresponsive to the issue.
5. IDEM—*Argument before jury.*—Where the indictment was found upon the evidence of seventeen witnesses, though it does not appear how many testified at the trial, the ruling of the court restricting the argument to thirty minutes, against the objection of the prisoner, was an undue abridgment of his rights, and reversible error.
6. IDEM—*Bill of exceptions.*—It is not error for the court to refuse to stop the trial to enable the counsel for prisoner to prepare a bill of exceptions, as the same might be prepared after verdict.

Error to judgment of corporation court of city of Lynchburg, rendered 13th day of February, 1890, against the plain-

tiff in error, Charles Jones, in a prosecution for a felony. Opinion states the case.

*Thomas N. Williams* and *Ford & Ford*, for the plaintiff in error.

*Attorney-General R. Taylor Scott*, for the commonwealth.

LEWIS, P., delivered the opinion of the court.

The indictment charges that the prisoner, "Charlie Jones, on the 24th day of December, in the year 1889, within the said city, in and upon one Chalmers Warwick, then and there being, an assault did make, and with a rock in the hands of him, the said Charlie Jones, then and there had and held, the said Charlie Jones then and there him, the said Chalmers Warwick, did feloniously, maliciously, and unlawfully beat, wound, ill treat, and cause bodily injury, with intent in so doing him, the said Chalmers Warwick, to maim, disfigure, disable, and kill," etc.

There was a demurrer to the indictment, which was annulled, whereupon the prisoner was put upon his trial, and the jury, having heard the evidence and the argument of counsel, returned a verdict in these words: "We, the jury, find the prisoner guilty of malicious assault, and fix his sentence at five years in the penitentiary." He thereupon moved the court to set aside the verdict, and to grant him a new trial, but the motion was annulled, and sentence pronounced in accordance with the verdict.

Taking up the assignments of error in the order in which they are presented, we are of opinion that the demurrer to the indictment was rightly overruled. The indictment sufficiently conforms to the language of the statute (Code, sec. 3671), and is sufficient.

There are other objections, however, to the proceedings in the court below which are well taken. The first of these is, that there was no writ of *venire facias* in the case. The Attorney-General, in opposition to this view, relies on a recital in the record, which, after setting forth the arraignment, etc., proceeds as follows: "Thereupon came a jury, to-wit (naming the jurors), who, being selected and tried in the manner prescribed by law for the selection and trial of juries in cases of felony, were sworn," etc.; and it is contended that from this the court must presume that all was rightly done which was required to be done. But this is a mistaken view. It has been repeatedly decided by this court that a *venire* is an indispensable process, both at common law and under the statute, to authorize the sheriff to summon a jury in a felony case, and, therefore, that the omission to direct a *venire* when required, is an error apparent on the record, of which advantage may be taken on motion in arrest of judgment, or for the first time on a writ of error in the appellate court. *Hall's Case*, 80 Va., 555; *Richard's Case*, 81 Id., 110. This is on the principle that that which is essential must affirmatively appear by the record, for it is well settled that the presumption that all acts have been rightly done cannot supply the substantive parts of a proper record in a felony case. Hence it is, that where a waiver by the accused leaves the record destitute of an essential part, he may afterwards take advantage of the defect, notwithstanding the waiver, as where he waives the right to be present throughout the trial, or consents to go to trial without arraignment or plea. 1 Bish. Crim. Prac. (3d Ed.), sec. 125; *Dougherty* v. *Commonwealth*, 69 Pa. St., 286; *Spurgeon's Case*, 86 Va., 652; *Hopt* v. *Utah*, 110 U. S., 574.

*Lawrence's Case*, 30 Gratt., 845, to this extent is consequently overruled.

But apart from what has just been said, the third bill of exceptions shows expressly that the jury were not summoned under a *venire facias*, but simply from a list furnished by the judge, and that on this ground the prisoner moved after ver dict in arrest of judgment. The motion, however, was over-ruled, because the objection was not made before the jury was sworn, and because, in the opinion of the court, the prisoner had not been prejudiced.

The Attorney-General, in support of this ruling, refers to section 3156 of the Code, which provides that "no irregularity in any writ of *venire facias*, or in the drawing, summoning, re-turning, or impaneling of jurors shall be sufficient to set aside a verdict, unless the party making the objection was injured by the irregularity, or unless the objection was made before the swearing of the jury." But this section was not intended to apply to juries in felony cases, as is obvious not only from the context, but from section 4048, which makes it apply to jurors in cases of misdemeanor. For why expressly declare in the last-mentioned section that the provision shall apply to misdemeanor cases if it was originally intended to apply to all cases, criminal as well as civil? It is made, however, to apply to felony cases by an act approved January 18, 1888 (Acts 1887–'88, p. 18); but does that meet the objection under consideration? We think not. The object of the section, as amended by the act just mentioned, is to cure any *irregularity* in the *venire facias*, but not to apply to a felony case in which there is no *venire* at all. The *venire* in every case of felony is a part of the "due process of law" which the legislature has provided, and it would require very plain language in a statute to justify the courts in holding that the omission to direct the writ, when required, is cured by verdict if not ob-jected to before. *People* v. *McKay*, 18 Johns., 212.

*Bristow's Case*, 15 Gratt., 634, which has been referred to, has no application. In that case the objection was, not that

there was no *venire,* but that the jury had been improperly selected after the *venire* had been executed, and it was held that the objection came too late after verdict.

The difference between that case and this is that here the omission to direct a *venire* leaves the record destitute of an essential part, which, therefore, cannot be supplied by presumption nor affected by the doctrine of waiver; whereas any defect in selecting the jury from the persons brought in under the *venire,* not being thus essential, may be waived; and so, upon the same principle, objection to the competency of a juror must be made before he is sworn upon the jury, unless by leave of the court.

Another well-founded objection is, that the verdict itself is defective, and ought, on that ground, also to have been set aside. The charge in the indictment is that the injury was done maliciously, with intent to maim, disfigure, disable, and kill. But the verdict simply finds the prisoner guilty of "malicious assault," without even saying with what intent the assault was committed. The rule is that the verdict must be a complete finding, in due form, upon the whole issue, and if it does not find the issue presented, or is silent on some element of the offence, it should be set aside, as no valid judgment can be recorded upon it. *Randall's Case,* 24 Gratt., 644, is exactly in point. In that case the indictment was for shooting with intent to kill, and the jury found a verdict of "malicious shooting." This court held the verdict fatally defective on the ground that "malicious shooting merely is in itself no offence at all," and reversed the judgment of the lower court.

The next question arises upon the prisoner's second bill of exceptions, which states that after the evidence had been closed the court announced that the argument before the jury would be limited to thirty minutes on a side, and restricted the counsel accordingly, to which ruling the prisoner excepted.

We are of opinion that the exception is well taken. It ap-

pears from the record that the indictment was found upon the evidence of seventeen witnesses, whose names are written at the foot of the indictment, and it is fairly inferrible from the record that not less than that number of witnesses testified before the petit jury for the Commonwealth. How many were examined for the prisoner does not appear. The alleged offence was committed on the main street of the city, on Christmas eve, in the night, and at a place at which a crowd had collected. The principal point before the jury was as to the identity of the prisoner; that is, as to whether the rock with which the injury was done was thrown by the prisoner or by another person, and upon this point the evidence was conflicting. It is obvious, therefore, that the ruling of the court in restricting the argument to thirty minutes, against the objection of the prisoner, was an undue abridgment of his rights, for which, if there were no other evidence in the case, the judgment would have to be reversed.

It is the right of every party charged with crime to be fully heard by counsel on his whole case, although the court, undoubtedly, has a superintending control over the course of the argument to prevent the abuse of that or any other right. It is a power, however, to be exercised with discretion, and with reference to the particular circumstances of each case, subject to review by an appellate court. *Ward's case*, 3 Leigh, 743; Proffat, Jury Trial, sec. 249.

In *People* v. *Keenan*, 13 Cal., 581, which was a prosecution for a felony, and in which case fourteen witnesses were examined, the trial court restricted the argument to an hour and a half for each counsel, of which the prisoner had two, and this was held to be error. In *Dille* v. *State*, 34 Ohio St., 617, eleven witnesses were examined, and the evidence, which occupied half a day in its delivery, was circumstantial and conflicting. The accused was defended by two counsel, who were limited by the court to thirty minutes in the argument, and it was

held that this was such an abuse of power as to prevent a fair trial. In *Hunt* v. *State*, 49 Ga., 255, which, like the present case, was an indictment for an assault with intent to kill, it was held that the trial court, in restricting the defendant's counsel to thirty minutes in his argument before the jury, over his protest that he could not do justice to his client's case in that time, "committed a grave error," which was ground for a new trial. And in *Williams* v. *State*, 60 Ga., 367, it was said that the length of argument, in the trial of a felony, is not a matter for predetermination by the court; that as the argument progresses, the court may confine its range to the facts and law of the case, and may interdict idle repetition, but that while counsel speak to the point, and proceed in good faith, wasting no time, the court ought to be patient, and hear what is said.

Another assignment of error relates to the refusal of the court to stop the trial to enable the counsel for the prisoner to prepare a bill of exceptions. It appears that in the progress of the trial the attorney for the commonwealth propounded sundry questions to several of the witnesses touching the iden‐ tity of the prisoner, which the counsel for the latter moved the court to require to be reduced to writing, but which the court refused to do, whereupon he asked for time to prepare a bill of exceptions, which motion was also refused, on the ground that there would be no difficulty in preparing the bill after verdict, to which ruling an exception was taken.

The usual practice in jury trials is for the party excepting to any ruling of the court to "save the point" at the time the ruling is made, and to formally prepare the bill of exceptions afterwards during the term. 4 Min. Insts., 745; *Page* v. *Clopton*, 30 Gratt., 415. But it is merely a question of practice, which is largely left to the discretion of the court, to be exercised according to the circumstances of the particular case; and unless the appellant court can see from the record that

this discretion has been abused, and that the exceptor has been prejudiced thereby, which does not appear in the present case, it will not interfere with the action of the trial court. *Coleman's case*, 25 Gratt., 865.

For the reasons, however, already stated, the judgment must be reversed, and the case remanded for a new trial.

JUDGMENT REVERSED.