## Staunton.

MYERS v. COMMONWEALTH.

SEPTEMBER 13th, 1894.

1. CRIMINAL PROCEEDINGS—*Venire facias.*—A *venire facias* is an indispensable process to authorize sheriff to summon a jury in a felony case, though the writ itself is not a part of the record unless made so by bill of exceptions or otherwise; nor does failure to object in the trial court to the want of such process waive the right of objection in this court.
2. IDEM—*Subsequent legislation.*—Nor is the rule altered as to this case by Acts 1893–4, p. 494, amending Code, § 3156, as the amendment was not intended to be retrospective in its action, statutes being always to be construed to operate *in futuro*, unless a retrospective effect be clearly intended.

Argued at Richmond.    Decided at Staunton.

Error to judgment of county court of Caroline county, pronounced December 15, 1893, in a prosecution against James Myers, plaintiff in error here, for a felony, a writ of error having been refused by the judge of the circuit court of said county. Opinion states the case.

*J. H. Dejarnette* and *R. G. Moncure,* for plaintiff in error.

*Attorney-General R. Taylor Scott,* for the commonwealth.

LEWIS, P., delivered the opinion of the court.

The prisoner was indicted and convicted in the county court of Caroline county for housebreaking with intent to commit larceny. Of the several assignments of error it will be necessary to consider one only, and that is the first, which is founded on the fact that the record does not show that there was a writ of *venire facias* in the case.

This is a fatal defect. As this court has often decided, a *venire* is an indispensable process, both at common law and under the statute, to authorize the sheriff to summon a jury in a felony case, although, as was said in *Spurgeon's Case*, 86 Va., 652, the writ itself is not a part of the record, unless made so by bill of exceptions or otherwise.

In the appendix to Chitty's Blackstone (2 vol., ed. 1865), is given the form of a record in a felony case, in which, after the indictment, the arraignment, the plea and issue, follows the order for a *venire*, or the award of jury process, as it is technically called, which begins in these words: "Therefore let a jury thereupon here immediately come," etc., after which follows the recital that "the jurors of the said jury by the said sheriff for this purpose impannelled and returned, to wit, [naming them], being called, come," etc.

This is in conformity with all the old authorities, which lay it down that the first process for convening the jury is the *venire facias*, and that there must be an award on the roll to warrant the issuing of the writ. Bac. Abr., tit. Juries (B) 2; 1 Chit. Crim. Law, 720. And while this precise formula is not followed in our practice, in making up the record, yet the record must show, as one of the essential formalities in a felony case, that the jury were brought in under a *venire ;* and, independently of the recent statute, to be mentioned presently, the failure of the accused to object to the want of a *venire* before the swearing of the jury does not preclude him from objecting afterwards. He may even do so for the first time in the appellate court. This is so because, at common law, the record must affirmatively show compliance with all essential formali_

ties in a felony case in order to constitute a conviction by due process of law, some of which essentials were enumerated in *Spurgeon's Case, supra.*

In the present case all that the record shows in regard to the summoning of the jury is as follows: "This day came again the attorney for thĕ commonwealth, and the prisoner was led to the bar in custody of the jailer of this court, and a panel of twenty jurors summoned by the sheriff of this county, sixteen of whom were examined by the court and found free from all legal exception and qualified to serve as jurors according to law. Thereupon the accused struck from the panel four of said jurors, and the remaining twelve against whom there was no legal objection, viz: W. P. Goodwin [and eleven others, naming them] were sworn," etc.

This does not show that there was any jury process in the case, nor can the defect be supplied by presumption. *Dougherty* v. *Commonwealth,* 69 Pa. St., 286; *Spurgeon's Case, supra.*

The attorney-general, however, contends that as no objection on that ground was made in the trial court, the case is within section 3156 of the Code, which provides that "no irregularity in any writ of *venire facias,* or in the drawing, summoning or impannelling of jurors shall be sufficient to set aside a verdict, unless the party making the objection was injured by the irregularity, or unless the objection was made before the swearing of the jury." But this position, apart from previous decisions on the subject, is untenable. In the first place, section 3156 is a literal copy of section 25 of the act of April 9, 1853, the 28th section of which act expressly provided that "nothing contained in the preceding sections" should "apply to the impannelling of juries in felony cases" (Acts 1852–53, p. 46); and not only the immediate context, but the title of chapter 152 of the Code, in which chapter section 3156 is embraced, shows that the provision relied on was intended to apply to "juries in civil cases" only. It is true that by the act of January 18, 1888, section 3156 was extended to "all cases, criminal as well

as civil," but the effect of this extension, as was held in *Jones' Case,* 87 Va., 63, was to cure any *irregularity* in the *venire facias,* leaving untouched any felony case in which there is no *venire* at all.

Since the appeal in the present case was taken, the legislature has amended and re-enacted section 3156, and added thereto the following provision : "And no judgment shall be reversed for the failure of the record to show that there was a *venire facias,* unless made a ground of exception in the trial court before the jury is sworn"; which provision is made applicable to all cases, criminal as well as civil. Acts 1893–94, p. 494.

This act was not referred to in the argument at the bar, nor does it affect the present case. A sufficient ground for so holding is the general rule that statutes are to be construed to operate *in futuro,* unless a retrospective effect be clearly intended. Bac. Abr., tit. Statute. Or, to use the language of the court in *City of Richmond* v. *Supervisors of Henrico County,* 83 Va., 204, "a statute is never construed to be retroactive, except the intent that it shall so operate plainly appears upon its face"; and here not only does no such intent appear, but when it is said, as the act in question does say, that no judgment shall be reversed for failure of the record to show that there was a *venire* in the case, unless objection *is* made before the swearing of the jury, it is evident that the act was intended to act prospectively only.

If it could be fairly construed as intended to apply to a felony case pending in the appellate court at the time of its enactment, the question would arise whether, as to such a case, it would not be void as the attempted exercise of judicial functions, and, also, as an *ex post facto* law, on the ground of its altering the situation of the accused to his disadvantage. Cooley, Const. Lim. (3d ed.), 87, 94 ; *Ratcliffe* v. *Anderson,* 31 Gratt.,105 ; *Kring* v. *Missouri,* 107 U. S., 221 ; *Medley, Petitioner,* 134 *Id.,* 160 ; *Duncan* v. *Missouri,* 152 *Id.,* 377 ; 7 Ency. of Law, p. 531, and cases cited.

In *State* v. *Fleming*, 66 Me., 142, an act designed to validate pending indictments found by a grand jury not legally drawn, was held void, on the principle laid down in the previous case of *State* v. *Doherty*, 60 Me., 504, where, in respect to a similar statute, the court said: "It assumes retroactively to invest with the authority, force and effect of law proceedings, trials, judgments, sentences and punishments in criminal cases, which up to the time of its enactment were illegal and void, and which, but for it, would have remained so to this day. It is clearly within the class of subjects inhibited by the national and state constitutions, as topics of legislation, and is included in the provision against passing any law to deprive any person of life, liberty, or property 'without due process of law,' or 'but by the law of the land.'"

Other authorities might be cited to the same effect, but it is needless to do so, as the act in question, as we have said, was not intended to operate retrospectively.

We must, therefore, hold according to the rule of the common law, as it existed prior to the enactment of the statute, that the failure of the prisoner to raise the objection now insisted upon before the swearing of the jury, was not a waiver of the right to object, and, consequently, that the judgment must be reversed, and the case remanded for a new trial. *Hall's Case*, 80 Va., 555; *Jones' Case*, 87 *Id.*, 63.

JUDGMENT REVERSED.