## Wytheville.

## JAMES PATTERSON, ALIAS "BOSSY" PATTERSON, V. COMMONWEALTH.

### June 12, 1924.

1. HOMICIDE—*Evidence to Support a Verdict of Guilty—Judgment Supported by the Evidence not Disturbed on Appeal.*—In the instant case a prosecution for homicide, if the jury believed the witnesses for the Commonwealth, there was ample evidence to support their verdict of guilty, though the Commonwealth's witnesses made some inconsistent statements and the accused also introduced testimony of conflicting statements of these witnesses, and sought to impeach them by character of testimony. Accused also sought to prove that other persons had a motive to commit the offense, and that it was another person who was seen to run from the scene of the shooting.

   *Held:* That these questions were for the jury and their finding, supported as it was by the judgment of the trial court, could not be disturbed by the Supreme Court of Appeals.

2. RECORD—*What Constitutes Part of the Record—Improper Matter Copied by Clerk—Bill of Exceptions.*—In the instant case, what was termed the printed record, was filed with matter that was no part of the record, and the mere fact that the clerk of the trial court copied it and it was printed could not make it such. It was as if it did not exist, and could not be considered by the Supreme Court of Appeals. To make it a part of the record it was necessary to have a bill or certificate of exceptions.

3. EXCEPTIONS, BILL OF—*Necessity—Change of Venue.*—Where the evidence adduced on motion for a change of venue, or to get a jury from another county, was not certified in a bill of exceptions, it could not be considered.

4. RECORD—*Motions as Part of Record—Motions not Made or Asked to be Made a Part of the Record.*—In the instant case, a prosecution for murder, motions were made to quash the indictment and also the *venire facias.* They were put in writing and sometimes called a plea, sometimes a petition and sometimes a motion; but they were not made or asked to be made a part of the record in any way that could be noticed by the Supreme Court of Appeals. The fact that they were in writing did not make them a part of the record. They were still

simply motions. If it was desired to make the motions, or the "petitions" as they are some times called, parts of the record, that should have been done by reference, or they should have been copied into the certificate or bill of exceptions.

5. Record—*What Constitutes Part of the Record—Motion—Evidence—Swearing of a Witness.*—A motion, the evidence, or the swearing of a witness is properly no part of the record.

6. Record—*Venire Facias.*—A *venire facias* is not *per se* a part of the record.

7. Appeal and Error—*Assignment of Error—Necessity of the Assignment.*—In several instances in the case at bar, proper bills of exceptions were taken to rulings of the trial court, but these rulings are not assigned as error.

   *Held:* That the Supreme Court of Appeals could not consider these rulings.

8. Appeal and Error—*Petition a Pleading—Assignment of Error.*—The petition for a writ of error is a pleading and must assign as error a l of the grounds relied on.

9. Appeal and Error—*Assignment of Error—Errors not Relied on by Counsel for Plaintiff in Error.*—Ordinarily the Supreme Court of Appeals does not consider assignments of error which counsel for plaintiff in error say they do not rely on. But when a case involves human life, this ought not to be sacrificed because of the mistake of counsel and the court will see to it that a verdict of conviction is supported by the evidence and minor objections will be waived.

10. Homicide—*Witnesses—Competency and Credit of Witnesses.*—That a witness is "a thief, a jailbird and a drunkard," goes only to his credit and not to his competency. He is competent even though he has been convicted of perjury.

11. Witnesses—*Competency—Donation to the Defense of Prisoner.*—On a prosecution for murder, the trial court permitted the prosecuting attorney, on cross-examination of a witness for the accused, to ask her if she "had been donating to the defense of the prisoner" and she answered that she had not. In this there was no error. It was permissible to show interest or bias of the witness, if it existed.

12. Witnesses—*Cross-Examination—Latitude Allowed.*—Much latitude is allowable in the cross-examination of an adverse witness. It is left largely to the discretion of the trial court, and that discretion will not be disturbed unless it has been plainly abused.

13. Homicide—*Harmless Error—Witness Asked if She had Donated to Prisoner's Defense.*—Where, upon cross-examination of a witness for the defense, the prosecuting attorney asked the witness if she had made a donation to the defense of the prisoner and she replied that she had not.

    *Held:* That the error, if any, was harmless.

14. DYING DECLARATIONS—*Bill of Exceptions not Showing what the Testimony was.*—A bill of exceptions stated that at the trial of the case the coroner "was allowed to testify with reference to a paper called a dying declaration," without showing what the testimony was.

*Held:* That this did not disclose any error. If any improper testimony was received, it should have been set out in the bill of exception.

15. DYING DECLARATION—*Sufficiency.*—Where it affirmatively appeared that when deceased was in extremis, and all hope was gone, he made a statement which the doctor wrote down and deceased signed, there was no error in permitting the doctor to testify to the physical condition of deceased at the time; that he was conscious of his condition, and that he wrote substantially what the deceased said, and that the latter signed it.

16. REMOVAL OF CAUSES—*Petition to Remove Cause to. a Court that has been Abolished.*—In the instant case petition of accused prayed that the case "be removed into the Circuit Court of the United States," but that court had been abolished.

*Held:* That it would be extremely technical to refuse a removal to the district court on this ground, and that the application would be treated as one for removal to the district court.

17. REMOVAL OF CAUSES—*Denial of Civil Rights.*—The denial of civil rights for which a removal to a Federal court may be had under section 641 of the U. S. Revised Statutes, section 1013, U. S. Comp. Stat. 1916, must be a denial of such rights or inability to enforce them, as construed by the highest court of the State, and the section does not apply to a case in which a right is denied by judicial action during a trial, or in the sentence, or in the mode of executing the sentence.

18. REMOVAL OF CAUSES—*Exclusion of Negroes from Jury.*—A petition for the removal of the cause to a Federal court complained of the exclusion of persons of the accused's race from the jury. It was conceded that the statute of this State on the qualifications of jurors was free from objection or exception.

*Held:* That there was no error in refusing the petition for removal on this ground.

19. INDICTMENT AND INFORMATIONS—*Grand Jury—Motion to Quash Indictment—Motion to Quash Indictment because Grand Jury Composed Entirely of White Men.*—In the instant case a motion was made to quash the indictment because the grand jury which found it was composed entirely of white men. The motion was overruled and the accused excepted.

*Held:* That even if the court could look at the written motion, which it could not because it was not made a part of the record, it stated no sufficient ground for quashing the indictment. It simply states that "all persons who are members of his race were excluded from

the list of jurors that indicted the petitioner," but does not state the ground of the exclusion, nor that it was "solely because of their race or color." He was not entitled to a mixed jury.

20. CONSTITUTIONAL LAW—*Mixed Jury.*—A mixed jury in a particular case is not essential to the equal protection of the laws, and the right to it is not given by any law of Virginia, or by any Federal statute. It is not, therefore, guaranteed by the fourteenth amendment, or within the purview of section 641 of the revised statutes of the United States.

21. CRIMINAL LAW—*Jury—Mixed Jury—Proof of Exclusion on Account of Race or Color.*—On a petition to remove a cause to a Federal court because of the exclusion of persons of the accused's race from the jury, proof must be offered to sustain the allegations of the petition. In the instant case the trial court dispensed with any proof that no negroes were placed on the jury list by the jury commissioners, but did not admit that they were omitted solely because of their race or color, or dispense with proof on that subject.

*Held:* No error to deny the petition.

22. APPEAL AND ERROR—*Record—Matters not Per Se a Part of the Record—Application to Quash Venire Facias—Case at Bar.*—The fact that a motion was made to quash the *venire facias* for the trial jury and was overruled appeared from the judgment of the court. But the written application stating the grounds of the motion is no part of the record in the case and could not be considered by the Supreme Court of Appeals which has uniformly held that it cannot look to or consider writings or other matters which are not *per se* a part of the record, unless they are made so by bill of exception or other appropriate procedure.

23. JURY—*Refusal to Quash Venire—Exclusion of Negroes from Jury.*—A bill of exceptions showed that a motion to quash the *venire facias* for the trial jury was not based on the ground that negroes were excluded solely on account of their race or color. It also failed to show that any evidence on the subject was tendered, so that even if the written motion could be considered, it stands on the bare assertion of the accused unsupported by any evidence, or offer of evidence, to support it. The motion, therefore, was rightly overruled because it was not only necessary to allege that negroes were excluded on account of their race, but also to prove it, or at least offer to prove it, and the fact that the motion was verified by the affidavit of the accused is immaterial.

24. HOMICIDE—*Trial—Presence of Judge.*—On a murder trial, it is not only the duty of the trial judge to be present throughout the trial, but his presence is essential to the validity of the trial. If from any cause his temporary absence from the court room is essential, even for a brief space of time, he should suspend the trial and leave the jury and the prisoner in the temporary charge of the executive

officer of the court. But to constitute such absence from the court-room as will vitiate the trial, it must appear to have been of such nature that the judge lost control for the time being of the proceedings of the trial, and the burden is on the accused affirmatively to show this, or a state of acts from which it necessarily results. It will not be presumed.

25. HOMICIDE—*Trial—Presence of Judge—Case at Bar.*—In the instant case the bill of exceptions showed that the judge left the court room for one or two minutes; that the door through which the judge left was but a few feet from the jury, and when open gives a clear view of the entire court room. It left it doubtful whether the judge "closed the door or the door closed itself," but does not leave any doubt that when he discovered that the door was shut, "he at once left the telephone and came out." It also showed that the matter was not brought to the attention of the trial judge till weeks after the trial.

*Held:* That the bill of exceptions did not show that the trial judge at any time lost control of the proceedings of the court. It would be a reproach to the administration of justice to set aside the verdict on the evidence adduced.

26. HOMICIDE—*Murder—Motive.*—That the record should disclose motive on the part of accused is not essential to a conviction for murder.

Error to a judgment of the Hustings Court of the city of Petersburg.

*Affirmed.*

The opinion states the case.

*Wm. F. Denny, B. F. Harris,* and *H. M. Green,* for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

BURKS, J., delivered the opinion of the court.

The plaintiff in error is a negro. He was indicted for killing a man whom the negro witnesses describe as

"the Jew," was tried, convicted of murder of the first degree, and sentenced to be electrocuted. Most of the witnesses for and against him were also negroes, and a very ignorant set. Some of them were unable to tell their ages, or the time by the clock, and one of them could not tell whether five minutes or ten minutes were the longer time. Many of their statements seemed highly improbable, and they had very inadequate ideas of time or distance, and yet they did not hesitate to give their opinions on the time of day or night when events occurred, or the distance of one place from another. It was chiefly with reference to such matters that their statements were confused or contradictory. When confronted with inconsistent statements in their testimony and asked which was correct, several of them answered both, and one of those who gave such an answer was a preacher, who was supposed, at least, to be better educated than the rank and file of his race. The jury who saw their demeanor on the stand and heard them testify were far better qualified to ascertain the facts than this court can be from simply reading the printed record. There was enacted before them a scene that could not be transmitted to this court.

The deceased was walking with his wife, towards their home, shortly after twelve o'clock at night, in the city of Petersburg, when a man stepped out from behind a tree and shot him with a shotgun. The range was so close that both wads from the load passed through his overcoat and other clothing and penetrated his body. His wife did not recognize his assailant, although she had seen him before, but as he ran off she saw it was a man about the size of the accused. The dying statement of the deceased did not give his name, but described him as a man who went with a one-leg man who sold coal in the winter and ice in the summer,

and drove a white horse. This man was found and testified that the accused worked with him, and that he drove "an old speckley white horse," although there is conflict as to the color of the horse, and the testimony of the witnesses is not altogether harmonious. There was testimony to the effect that the accused was seen, shortly before the homicide, standing behind the tree with a gun in his hand, and that very shortly after the shooting he went to a house in the neighborhood, knocked on a window, and asked to be let in quick, and when admitted he had a gun in his hand and said he had shot a man but did not want the witness to say anything about it. He had on gum boots the night of the shooting, and there were six or seven inches of snow on the ground. Tracks made by gum boots were found in the snow leading from the front gate to the window and thence back to the front door of the house where he had asked admittance. There was other incriminating testimony.

[1] The testimony of the witnesses for the Commonwealth on these subjects was not harmonious. The witnesses made some inconsistent statements. The accused also introduced testimony of conflicting statements of these witnesses, or some of them, and sought to impeach them by character testimony. He also sought to prove that other persons had a motive to commit the offense, and that it was another person who was seen to run from the scene of the shooting. These were questions for the jury. If the jury believed the witnesses for the Commonwealth, there was ample evidence to support their verdict, and their finding, supported as it is by the judgment of the trial court, cannot be disturbed by this court.

There are a number of errors assigned, but in view of the evidence in the cause, several of them may be

classed as frivolous and will not be further noticed. These are the refusal of the trial court to get a jury from another county; its refusal to change the venue, and its refusal to send the jury from the court room while counsel for the accused presented his views on the right of the accused to a change of venue.

[2-4] What is termed the printed record in this case is filled with matter that is no part of the record, and the mere fact that the clerk of the trial court copied it and it was printed cannot make it such. It is as if it did not exist, and we cannot consider it. To make it such it was necessary to have a bill or certificate of exception. The exception adduced on the motion for a change of venue, or to get a jury from another county, is not certified in a bill of exception, and cannot be considered. There are several pages of a running colloquy between the court and counsel for the defendant. Motions were made to quash the indictment and also the *venire facias*, and they were put in writing and sometimes called a plea, sometimes a petition, and sometimes a motion, but they were not made nor asked to be made a part of the record in any way that can be noticed by this court. The fact that they were in writing did not make them a part of the record. They were still simply motions. If it was desired to make the motions, or the petitions as they are sometimes called, parts of the record, that should have been done by reference, as was done on the petition for removal to the Federal court, or they should have been copied into the certificate or bill of exception. The fact that a motion was made and was overruled sufficiently appears from the order of the court overruling the motion, but not the details of the motion, or the evidence offered in support of it.

[5] In Bishop's Crim. Proc., section 1347, it is said,

"a motion, the evidence, or the swearing of a witness is properly no part of the record."

[6] So likewise, the *venire facias* was not *per se* a part of the record. *Myers* v. *Commonwealth*, 90 Va. 785, 20 S. E. 152.

In *Dallas Wright* v. *Commonwealth*, 111 Va. 873, 69 S. E. 956, the bills of exception were filed within the time allowed by law, but the record failed to show that the sixty days was agreed upon and entered of record by consent of the parties, which the statute required. Wright, a white man, and two negroes were tried for murder, and the testimony was substantially the same in all of the cases. The bills of exception in the case of the negroes were filed within the time required by law, but because the record in the *Wright Case* did not show that the consent for the extension of the time in which the bills might be filed was not only agreed upon but entered of record, the court held that the bills of exception were no parts of the record, and although it reversed a judgment of death in the case of the two negroes, it felt compelled to affirm a similar judgment in *Wright's Case*.

It is manifest, therefore, how important it is that matters not otherwise part of the record should be made so in a manner allowed by law.

It was held in *Barnes' Case*, 92 Va. 794, 23 S. E. 784, that this court could only consider a case on writ of error on the record made in the trial court.

[7, 8] In several instances in the case at bar proper bills of exceptions were taken to rulings of the trial court, but these rulings are not assigned as error. Of course we cannot consider them, as the petition for the writ of error is a pleading and must assign as error all of the grounds relied on. Burks Pl. & Pr. (2d ed.), section 396, and cases cited.

[9] There are eleven assignments of error, numbered from 1 to 11, consecutively. Immediately after this enumeration, the petition states in capital letters, "errors relied on" and following this are these words, "exceptions 5, 6, 7, 10 and 4," which do not embrace the ruling on the motion to set aside the verdict as contrary to the law and the evidence, and several other assignments of more or less importance. Ordinarily, this court does not consider assignments of error which counsel for plaintiff in error say they do not rely on, but in this case a human life is involved and this ought not to be sacrificed because of the mistake of his counsel, and hence we have been at pains to see that the verdict of conviction is supported by the evidence. This being true, minor objections might be waived.

[10] It is assigned as error that the trial court refused a motion to strike from the record the testimony of Wm. Tabb, a witness for the Commonwealth. The record does not show that any such motion was made. In the brief it is said that he was impeached, "he was a thief, a jail-bird and a drunkard," and "should not be allowed to be heard in any court of justice." If so, it only went to his credit, not to his competency. He would have been a competent witness, even if he had been convicted of perjury. Code section 4779, and revisors' note.

[11-13] It is assigned as error that the trial court permitted the prosecuting attorney, on cross-examination of a witness for the accused, to ask her if she "had been donating to the defense of the prisoner and she answered she had not." In this there was no error. It was permissible to show interest or bias of the witness, if it existed. *Wadley* v. *Commonwealth*, 98 Va. 803, 35 S. E. 452. The answer showed that there was none on that account. Much latitude is allowable in the cross-exam-

ination of an adverse witness. It is left largely to the discretion of the trial court, and that discretion will not be disturbed unless it has been plainly abused. *Burke v. Shaver*, 92 Va. 345, 23 S. E. 749; *Savage v. Bowen*, 103 Va. 540, 49 S. E. 668; *Adams v. Ristine*, 138 Va. 273, 122 S. E. 126. Furthermore, the error, if any, was harmless, as the witness answered that she had not contributed to the defense of the prisoner.

[14, 15] It is assigned as error that "the court erred in allowing Dr. McGill to read a paper to the jury and call it a dying declaration of Mr. I. Seid, and then testify that it was a paper prepared by himself." All the bill of exception states is "that at the trial of the case the coroner, Dr. E. L. McGill, was allowed to testify with reference to a paper called a dying declaration," without showing what the testimony was. This does not disclose any error. If any improper testimony was received, it should have been set out in the bill of exception. In fact none was received. It affirmatively appears that when deceased was in *extremis*, and all hope was gone, he made a statement which Dr. McGill wrote down and deceased signed. Dr. McGill testified only to the physical condition of the deceased at the time; that he was conscious of his condition, and that he wrote substantially what the deceased said, and that the latter signed it.

[16-18] Exception was taken to the ruling of the trial court because it refused to remove the case to the Federal court, and this is assigned as error. The petition filed by the accused prayed that the case "be removed into the *Circuit* Court of the United States." The bill of exception states that the prayer was for the removal of "his case to the Circuit Court of Appeals of the United States of America, a copy of which said petition is filed herewith as a part hereof." This was an appli-

cation for removal to the Circuit Court of the United States. But that court had been abolished. U. S. Comp. Stat. 1916, section 1266. It would be extremely technical to refuse a removal to the district court on this ground. We shall treat the application as one for removal to the district court. The statute under which the removal was sought is section 1013, U. S. Comp. Stat. 1916, which is the same as section 641 of the Revised Statutes, and in construing the latter the Supreme Court has several times held that the denial of civil rights for which a removal may be had must be a denial of such rights, or an inability to enforce them, as construed by the highest court of the State, and that the section did not apply to a case in which a right is denied by judicial action during a trial, or in the sentence, or in the mode of executing the sentence.

In *Murray* v. *Louisiana*, 163 U. S. 101, 16 Sup. Ct. 990, 41 L. Ed. 87, it was assigned as error that, at the trial, the State court had refused to remove the case to the Federal court, on the application of the petitioner based on the ground that he was a negro and that "persons of African descent were, by reason of their race and color, excluded by the jury commissioners from serving as grand and petit jurors." The court said: "To dispose of such assignments it is sufficient to cite *Neal* v. *Delaware*, 103 U. S. 370, 26 L. Ed. 567, and *Gibson* v. *Mississippi*, 162 U. S. 565, 16 Sup. Ct. 904, 40 L. Ed. 1075, decided at the present term, in which, after careful consideration, it was held that Congress had not, by section 641 of the Revised Statutes, authorized a removal of the prosecution from the State court upon allegation that jury commissioners or other subordinate officers had, without authority derived from the Constitution and laws of the State, excluded colored citizens from juries because of their race; that said

section did not embrace a case in which a right is denied by judicial action during a trial, or in the sentence, or in the mode of executing the sentence; that for such denials arising from judicial action after a trial commenced the remedy lay in the revisory power of the higher courts of the State, and ultimately in the power of review which this court may exercise over their judgment whenever rights, privileges or immunities claimed under the Constitution or laws of the United States are withheld or violated; and that the denial or inability to enforce, in the judicial tribunals of the States, rights secured by any law providing for the equal civil rights of citizens of the United States, to which section 641 refers, and on account of which a criminal prosecution may be removed from a State court, is primarily, if not exclusively, a denial of such rights, or an inability to enforce them, resulting from the Constitution or laws of the State, rather than a denial first made manifest at and during the trial of the case.

"The petition for removal complained of the acts of the jury commissioners in illegally confining their summons to white citizens only, and in excluding from jury service citizens of the race and color of the petitioner, but did not aver that the jury commissioners so acted under or by virtue of the laws or Constitution of the State; nor was there shown, during the course of the trial, that there was any statutory or constitutional enactment of the State of Louisiana which discriminated against persons on account of race, color or previous condition of servitude, or which denied to them the equal protection of the laws."

In the case at bar it is conceded that the statute of this State on the qualifications of jurors is free from ob-

jection or exception.   The statute (Code 1919) is quoted. in the margin.*

[19] A motion was made to quash the indictment be-- cause the grand jury which found it was composed en-- tirely of white men.   The motion was overruled and the accused excepted.   This is assigned as error.   Even if we could look at the written motion, which we can-- not, because it is not made a part of the record, it. states no sufficient ground for quashing the indictment. It simply states that "all persons who are members of his race were excluded from the list of jurors that in-- dicted the petitioner," but does not state the ground of the exclusion, nor that it was "solely because of their race or color."   He was not entitled to a mixed jury.

[20] In *Virginia* v. *Rives,* 100 U. S. 313, 25 L. Ed. 667, in referring to the right to demand a mixed jury, it is said:   "The privilege for which they moved, and. which they also asked from the prosecution, was not. a right given or secured to them, or to any person, by the law of the State, or by any act of Congress, or by the fourteenth amendment of the Constitution.   It is. a right to which every colored man is entitled, that, in the selection of jurors to pass upon his life, liberty, or property, there shall be no exclusion of his race, and. no discrimination against them because of their color.

*Section 5984.   Who liable to serve as jurors.—All male citizens over twenty-one years of age who shall have been residents of this State two years, and of the county, city, or town in which they reside one year next preceding their being summoned to serve as such, and competent in other respects, except as hereinafter provided, shall remain and be liable to serve as jurors; but no officer, soldier, seaman, or marine of the United States: army or navy shall be considered a resident of this State by reason of being stationed herein, nor shall an inmate of any charitable institution be quali-- fied to serve as juror.   The following persons shall be disqualified from. serving as jurors:

"First:   Idiots and lunatics;

"Second:   Persons convicted of bribery, perjury, embezzlement of public funds, treason, felony, or petit larceny;

"But no male citizen over sixty years of age shall be compelled to serve as a juror."

But this is a different thing from the right which it is asserted was denied to the petitioners by the State court, *viz.*, a right to have the jury composed in part of colored men. A mixed jury in a particular case is not essential to the equal protection of the laws, and the right to it is not given by any law of Virginia, or by any Federal statute. It is not, therefore, guaranteed by the fourteenth amendment, or within the purview of section 641."

[21] Furthermore, no proof was offered to sustain the allegations of the petition. The trial court dispensed with any proof that no negroes were placed on the jury list by the jury commissioners, but did not admit that they were omitted solely because of their race or color, or dispense with proof on that subject.

[22] It is also assigned as error that the trial court refused to quash the *venire facias* for the trial jury. The fact that such a motion was made and was overruled appears from the judgment of the court. But the written application stating the grounds thereof is no part of the record in the case and cannot be considered by this court. The case presented is no stronger than the *Dallas Wright Case*, to which reference has been made. This court has uniformly held that it cannot look to or consider writings or other matters which are not *per se* a part of the record, unless they are made so by bill of exception or other appropriate procedure. *Barnes' Case*, 92 Va. 794, 23 S. E. 784; *Wright's Case*, 111 Va. 873, 69 S. E. 956.

We give this bill of exception in full in the margin.*

*"Be it remembered, that before but on the day of the trial of this case, to-wit, on the 31st day of May, in the year 1923, the defendant moved to dismiss or quash the *venire* on the ground that it was contrary to law, in that the jury was not selected according to law for the reason that no members of citizens of the class to which the defendant belonged had been selected, which motion was in writing and verified by the affidavit of the defendant, and it was further stated in said motion that there were members

[23] This bill of exception is all of the record we have on the subject. It shows that the motion was not based on the ground that negroes were excluded solely on account of their race or color. It also fails to show that any evidence on the subject was tendered, so that even if the written motion could be considered, it stands on the bare assertion of the accused unsupported by any evidence, or offer of evidence, to support it. The motion, therefore, was rightly overruled because it was not only necessary to allege it, but also to prove it, or at least offer to prove it.

In *Charley Smith* v. *Mississippi*, 162 U. S. 592, 601, 16 Sup. Ct. 900, 903 (40 L. Ed. 1082), it is said: "The facts stated in the written motion to quash, although that motion was verified by the affidavit of the accused, could not be used as evidence to establish those facts, except with the consent of the State prosecutor or by order of the trial court. No such consent was given. No such order was made. The grounds assigned for quashing the indictment should have been sustained by distinct evidence introduced or offered to be introduced by the accused. He could not, of right, insist that the facts stated in the motion to quash should be taken as true simply because his motion was verified by his affidavit. The motion to quash was, therefore,

of the defendant's class living in the city of Petersburg, Virginia, who were eligible for jury service. After an inspection of the list made by the jury commissioners, and from which list ballots were prepared and put in the jury box, it appeared to the court, and was admitted by the Commonwealth, that no members of the defendant's race were put on the jury list by the commissioners. The court further certifies that the *venire* was drawn from the jury box in the manner required by the statute, and no objection, except as above stated, was made by the prisoner to the said *venire*. The court overruled the said motion.

"To which action of the court, overruling said motion, the defendant excepted, and tenders this his certificate or bill of exception No. 5, which he prays may be signed, sealed and enrolled, which is accordingly done, this 27th day of July, 1923."

unsupported by any competent evidence; consequently it cannot be held to have been erroneously denied."

The tenth assignment of error is: "The court erred in leaving the court room while the Commonwealth's witness was testifying for the State and being examined by the Commonwealth's attorney, and going to a side room which is several feet from the presiding judge's stand and there closed a door behind him and used the 'phone for several minutes, being out of view of the court room and the defendant being left without the protection of the court."

This assignment is based on bill of exception No. 7, copied in the margin.*   The facts therein stated do not sustain the averments of the petition.

The bill of exception shows that the door through which the judge left the court room was but a few feet from the jury, and when open gives a clear view of the entire court room.   It leaves it doubtful whether the judge "closed the door or the door closed itself," but does not leave any doubt that when he discovered that the door was shut, "he at once left the telephone and came out."   The bill of exception also shows that the matter was not brought to the attention of the trial judge till weeks after the trial.

[24] On a murder trial, it is not only the duty of the trial judge to be present throughout the trial, but his presence is essential to the validity of the trial.   If from

---

*"Be it remembered, that during the trial of the case and while a witness was being examined by the Commonwealth's attorney, the judge went to a side room to answer the telephone and either closed the door or the door closed itself, which shut off his view of the court room; but, seeing the door, which was only a few feet from the jury, and which, when open, gives a clear view of the entire court room, closed, he at once left the telephone and came out.   He was absent not to exceed one or two minutes.   To this action of the court the defendant did not except nor bring the same to the court's attention, but now tenders this his certificate or bill of exceptions No. 7, which he prays may be signed, sealed and enrolled.   The court is of opinion that, no exception being taken at the time of the trial, the defendant is not entitled to a bill of exception as to the matters contained above, but simply certifies it as one of the things which occurred during the trial, which is accordingly done, this the 27th day of July, 1923."

any cause his temporary absence from the court room is essential, even for a brief space of time, he should suspend the trial and leave the jury and the prisoner in the temporary charge of the executive officer of the court. But to constitute such absence from the court room as will vitiate the trial, it must appear to have been of such nature that the judge lost control for the time being of the proceedings of the trial, and the burden is on the accused affirmatively to show this, or a state of facts from which it necessarily results. It will not be presumed. *Hayes* v. *State*, 58 Ga. 35; *O'Brien* v. *People*, 17 Col. 561, 31 Pac. 230; *Scott* v. *State*, 47 Tex. Cr. R. 568, 85 S. W. 1060, 122 Am. St. Rep. 717, and note; *Skaggs* v. *State*, 88 Ark. 62, 113 S. W. 346, 16 Ann. Cas. 622 and note.

[25] A majority of the court is of opinion that the bill of exception does not show that the trial judge at any time lost control of the proceedings of the court, and that it would be a reproach to the administration of justice to set aside the verdict on the evidence adduced.

[26] The deceased was murdered by a man who deliberately laid in wait for that purpose, and the only question was who was that man. The accused has had a fair and impartial trial, and his accusers have been witnesses of his own race and color, who were under no constraint or restraint, and without whose testimony he could not have been convicted. The testimony does not disclose any bias or prejudice against him, nor has the question of his race or color been injected into the trial otherwise than by the motions of the accused. The case presents none of the features of *Moore* v. *Dempsey*, 261 U. S. 86, 43 Sup. Ct. 265, 67 L. Ed. 543. Upon this testimony the jury have found the accused guilty and meted out to him the extreme penalty of the

law.   This finding has been approved by a judge of learning and long experience, whom the record shows heard the case with most exemplary patience.   This court has reviewed the proceedings on that trial carefully and has not found any error therein to the prejudice of the accused.   It is true that the record does not disclose any motive on the part of the accused, but that is not essential.   1 Bish. Cr. Law (9th ed.), section 338.   To interfere with a verdict and judgment rendered under the circumstances above set forth would disturb organized society.   The judgment of the trial court will be affirmed.

*Affirmed.*