## Staunton.

## Seth Lockard v. L. O. Whitenack.

September 20, 1928.

The opinion states the case.

*A. B. Hunt* and *T. W. Messick*, for the appellant.

*Dillard, Moomaw & Dillard*, for the appellee.

HOLT, J., delivered the opinion of the court.

This litigation had its inception in a motion for judgment returnable on March 20, 1923, to the Corporation Court of the city of Roanoke. In it Seth

Lockard undertook to notify L. O. Whitenack and P. G. Moore that he would ask judgment against them for damages caused by reckless operation of an automobile owned by Whitenack and run by his agent, Moore. This motion was served on Whitenack but not on Moore.

For the purpose of representing him, P. H. Dillard, Jr., a member of the law firm of Dillard, Moomaw & Dillard, went with Whitenack to that court on the morning of the return day. For some reason the judge was not present. Mr. Dillard said that "after we went in the clerk's office and found the writ tax had not been paid, I told Mr. Whitenack he could go on back to his work and that there would have to be another notice served upon him before they could get him before the court. The reason I know that I am correct in my testimony is that on that morning there on the clerk's desk I wrote on the notice which was served on Mr. Whitenack the following, which is on the notice to-day: 'L. O. Whitenack appeared March 20, 1923, at 10 A. M., and waited until 10:30. Upon investigation no writ tax had been paid and Moore had not been served.' I recollect the day writing that on that notice. The next thing I heard of the matter execution had issued on a judgment from the law and chancery court on Mr. Whitenack's time several months later."

Mr. T. W. Messick, one of counsel for the plaintiff there, gives this account of what occurred: "The motion for judgment was returnable on the 20th of March, 1923. On that day, in the neighborhood of ten o'clock, to the best of my recollection it was after ten o'clock, to the exact minute I cannot say, I went to the courthouse for the purpose of making a formal motion before the court for judgment in the case. I

had not as yet paid the writ tax. I went into the clerk's office for the purpose of paying the writ tax and paid the tax. While I was paying same or had finished paying same and started to leave the clerk's office, I met Mr. Dillard and Mr. Whitenack at the door of the clerk's office and discussed the matter with them. I told them that I had paid the writ tax and as there wasn't any judge on the bench we would just consider the case docketed and I would not make any formal motion before the court."

■ It is not necessary for us to say which of these statements is the more accurate. Section 6046 of the Code of Virginia provides that a motion shall be docketed on the return day, but there is no requirement that the writ tax shall be paid before that time, and counsel was mistaken in assuming that there was.

■ In 2 Pomeroy's Equitable Remedies, section 659, it is said: "It is a familiar doctrine that a mistake of law will not be relieved against save in certain exceptional cases. This principle is generally applied to relief against judgments. Bearing in mind that we are now considering only mistakes as to the proceedings, it is clear that a party should not be allowed to set up his lack of knowledge of law as a reason for not presenting his case. If he were allowed this right, it would be a very simple matter as an unsuccessful litigant to obtain a new trial on the ground that he did not present certain evidence because he thought it would not be admissible. The advice of counsel that there is no defense, or a similar expression from the judge on the bench, will not be sufficient to warrant equity in relieving from a mistaken course taken in reliance on such advice."

This motion was not abandoned but went on the docket in due course. There had been personal service

of process on Whitenack, and he was represented by counsel duly retained. Lockard was in no wise responsible for his mistake.

■ Afterwards, and at its April term, 1923, this order was entered in this case by the corporation court:

"Seth Lockard

*v.*

"L. O. Whitenack, et al.

"By agreement of parties, by counsel, it is ordered that this case be removed to the Court of Law and Chancery of the city of Roanoke, Virginia, to be therein docketed as if therein originally instituted."

It is not claimed that the provision of section 6175 of the Code, dealing with the transfer of causes from one court to another, was complied with, and it is not denied that such an order might have been entered by consent of counsel duly given.

On the occasion of the transfer Mr. Messick was present and made the necessary motion. His evidence is:

"At the next term of the court I moved the court to transfer the case to the law and chancery court and this was done at the calling of the docket. I do not recollect positively whether Mr. P. H. Dillard was present at the calling of the docket and consented to the transfer of the case or not, but I do know that when the motion was made one of the members of the firm of Dillard, Moomaw & Dillard were present and consented to the transfer. The best of my recollection is that it was Mr. Pat Dillard. After the case was transferred to the law and chancery court I had the case set for trial at the calling of the docket and called Mr. Dillard on the 'phone and informed him the date the case was to be tried. As to what reply Mr. Dillard made to me I do not remember."

Mr. Dillard, on direct examination, testified as fol lows:

"Q. It appears that an order was entered in the corporation court transferring the case of *Seth Lockard* v. *L. O. Whitenack and P. G. Moore* to the court of law and chancery, said order reciting that it was entered by agreement of counsel. State whether or not you ever agreed or knew anything about that order?

"A. My recollection of it is that I knew nothing about it. Mr. Messick called me up about removing some case, but I didn't know it was this case. I thought perhaps if it was this boy's case, that another notice had been served on him and that he had employed someone else to represent him. It could have come about in that way."

On cross-examination he said:

"Q. At the April term of court, were you not present at the calling of the docket when a motion was made, and which you consented to, and the case was transferred to the court of law and chancery?

"A. I may have been present at that docket, but I didn't consent to the transferring of this case. I didn't consider I had been employed because he had no other notice that I knew of. Why should I consent if I was not interested in the case. I do recollect you calling me up over the 'phone, but I didn't consent to any removal."

Giving to each of these gentlemen equal credit for good faith, we believe this evidence shows that Mr. Dillard was then present. Mr. Messick said that he was, and Mr. Dillard said that he might have been.

In *Walker* v. *Commonwealth*, 144 Va. 648, 131 S. E. 230, this court had occasion to deal with the verity of record, and emphasizes the rigor of that

rule. "The record imports such absolute verity that no evidence will be received to add to it or subtract from it, except under statutory permission. So strict is the application of the rule that this court refused to accept the most satisfactory proof of an omission from the record in a case involving human life. *Dallas Wright* v. *Commonwealth*, 111 Va. 873, 69 S. E. 956. See also *Barnes* v. *Commonwealth*, 92 Va. 794, 23 S. E. 784; *Patterson* v. *Commonwealth*, 139 Va. 589, 123 S. E. 657."

Under this rule, and under authority of the old English case of *Anonymous*, Salk. 86, 88, there are authorities to the effect that a judgment recovered where there was no personal service of process and an unauthorized appearance by a regular attorney will not be enjoined in the absence of proof of collusion. *Bunton* v. *Lyford*, 37 N. H. 512, 75 Am. Dec. 144.

It is now, however, well established that one who has not been served with process may always show it, and in such a case he may show that any lawyer who purported to represent him, did it without authority, and as a consequence thereof may have the judgment set aside. Probably the leading cases on this subject are *Shelton* v. *Tiffin*, 6 Howard 163, 12 L. Ed. 387, and *Harshey* v. *Blackmarr*, 20 Iowa 161, 89 Am. Dec. 520, the opinion in this case being by Judge Dillon.

In *Raub* v. *Otterback*, 89 Va. 645, 16 S. E. 933, it was held that courts cannot acquire jurisdiction over a party without personal service of process against him, or appearance by him in person, or by his authorized attorney, and that his evidence is competent to show that he employed no such attorney.

*Smiley* v. *Provident Life & Trust Co.*, of Philadelphia, 106 Va. 787, 56 S. E. 728, is also in point. That was an action of ejectment in which a member of the

Staunton bar appeared as counsel for the trust company. There was a judgment for the plaintiff. It was made to appear that process was by publication only, and that this lawyer acted without authority. The judgment was set aside.

It will be observed that in these cases there was no actual personal service of process, and it by no means follows that the rule stated applies when the party is actually in court.

This subject is elaborately considered by Judge Dillon in *Harshey* v. *Blackmarr, supra.* This is his statement of the present status of this question in England: "And in England, in the court of exchequer, the rule as laid down in Salkeld had quite recently, and upon great consideration, been criticised, and partially at least overturned: See *Bayley* v. *Buckland*, 1 Ex. 1 (1847); section 16 L. J. Ex. 204, where Rolfe, B., alluding to 1 Salk. 88 says: 'The nonresponsibility or suspiciousness of the attorney is but a vague sort of criterion of safety to the defendant, and by the hypothesis the defendant is wholly without blame, and may, notwithstanding, be ruined. It is true that the plaintiff is equally blameless; but then the plaintiff, if the judgment be set aside, has his remedy against the defendant as before, and suffers only the delay, and the possible loss of cost.' And the court, where the appearance for the defendant is unauthorized, proceeded to make a distinction between cases where process has been served and cases where it has not. If, says the court, the process is served, the plaintiff innocent of any fraud or collusion, and the attorney is responsible, the party for whom the attorney appeared is confined to his remedy against him. (This would overturn *Denton* v. *Noyes*, [6 Johns. (N. Y.) 296, 5 Am. Dec. 237], *supra*, as in that case no process was

served.) The reason given is, that here the plaintiff is without blame, and the defendant is guilty of negligence in not appearing and making defense by his own attorney, if he has any defense on the merits. But on the other hand, 'if the plaintiff, without serving the defendant, except the appearance of an unauthorized attorney for the defendant, he is not wholly free from the imputation of negligence; the law requires him to give notice to the defendant by serving the writ, and he has not done so. The defendant there is wholly free from blame, and the plaintiff not; so we must set aside the judgment.' "

In this case there was no personal service of process, but Judge Dillon was of opinion that on principle the responsibility of the attorney had nothing to do with the question and that no party not negligent should be bound by the acts of another confessedly unauthorized and unratified.

■ ■ The nature of the suit and the character of the service have an important bearing upon the extent to which equity may grant relief. If it were one which in due course would have gone to judgment, then the mere fact that some friendly attorney, who had not been employed, did what he could to help would make the judgment neither void not voidable. Such an attorney could not, of course, confess judgment, nor waive any right. If the process was defective, his appearance would not amount to a waiver of that defect, but this is as far as we can in principle go. It comes back to this simple proposition, a litigant cannot complain who is not hurt. Indeed, when a man is regularly before the court on personal service, but is not present, and has no counsel, the court may, and often does, appoint some one to represent him, but a personal judgment must rest upon personal service of

process, or upon voluntary appearance either in person or by some duly authorized agent, otherwise there is want of due process of law. *Pennoyer* v. *Neff*, 95 U. S. 714, 24 L. Ed. 565.

This case, however, does not turn upon that point. Here the attorney was duly retained.

"If an attorney is authorized to appear, the jurisdiction over the defendant is perfect, and the subsequent action of the attorney, not induced by fraud of the adverse party, is binding on the client at law and in equity." Freeman on Judgments, section 500.

The order of April, 1923, in so far as it recites that the transfer was by consent of parties by counsel, imports verity, certainly to this extent. It is a statement by the court that some lawyer on that occasion, representing himself as counsel for Whitenack, consented to the removal. That is a flat statement of a fact immediately within the court's knowledge, and under rules of utmost liberality we could only inquire into the question of who gave the consent, and his authority.

In *Great Western Mining Co.* v. *Woodman of Alston Min. Co.*, 12 Colo. 46, 20 Pac. 771, 13 Am. St. Rep. 204, the court said: "The records show that the defendant company appeared by attorney. This is conclusive proof that the attorney so appeared, but only *prima facie* evidence of the authority of the attorney to act."

Mr. Dillard was counsel regularly retained and has never been discharged. His authority is presumed to have continued. 6 C. J. 672. His agency was not at an end. Had he discovered on the afternoon of March 20 that the writ tax had been paid, he would, as a matter of course, in all human probability, have made every possible defense without seeking any additional

warrant or power. We have already seen that he must have been in court when the order of transfer was made. The conclusive presumption is that some lawyer consented to it, and there is nothing by remotest suggestion which leads us to believe that it was done by another.

If we were to put aside that rule of law which declares that court records import verity, the result would be the same. These records would still be high evidence of what actually occurred. The testimony is balanced and is in the form of deposition, while the docket of the chancery court shows that Dillard, Moomaw & Dillard were marked as counsel for the defendant. When we remember this, and that the burden is upon the plaintiff to prove his case, we think that he has failed.

After this transfer, counsel for Lockard notified Mr. Dillard that the case had been set down for trial on a certain day, and when it was actually called the judge directed that Mr. Dillard be again notified, and he was called the second time. His reason for not responding is that he thought the motion had never been docketed and had been abandoned, and that the court and counsel for Lockard had some other action in mind. This was his mistake and for it the plaintiff is in no wise responsible. It may be said in passing that there is nothing in the record to suggest fraud, and that the trouble grew out of the very understandable mistake which Mr. Dillard made in the beginning, but after all it was Mr. Dillard's mistake.

It is said that for another reason plaintiff cannot prevail—that before a judgment can be set aside it must appear that the plaintiff debtor has a meritorious defense. This is the statement on that issue in the bill: "Your complainant represents that

he has a full and absolute defense to said notice and in accordance with instruction received waited for the service of second notice in order to take such steps as might be necessary to defend himself."

This statement of the plaintiff's case is insufficient. 34 Corpus Juris, page 489; *Preston* v. *Kindrick*, 94 Va. 760, 27 S. E. 588, 64 Am. St. Rep. 777. No objection, however, was made to this insufficiency in the court below. The cause was fought out on its merits, and it is now too late to interpose any such defense. *Thompson* v. *Artrip*, 131 Va. 347, 108 S. E. 850.

It was to prevent the enforcement of an execution based on this common-law judgment, and to have it opened to the end that a defense on its merits might be made, that this suit was instituted. For the reasons indicated it must fail, and should be dismissed. The net result is that the common-law judgment stands unimpeached and may be enforced in such manner as Lockard deems best.

The decree appealed from must be reversed, and it is so ordered.

*Reversed.*