# Richmond

## WILLIAM W. WILSON, ET ALS. v. J. W. S. BUTT, ET ALS.

March 11, 1937.

Present, Campbell, C. J., and Holt, Hudgins, Gregory,
Eggleston and Spratley, JJ.

The opinion states the case.

*Baird, White & Lanning*, for the appellants.

*R. H. Bagby* and *Clyde W. Cooper*, for the appellees.

HOLT, J., delivered the opinion of the court.

To a bill in chancery and to an amended bill a demurrer was interposed and has been sustained. From that decree comes this appeal.

In those bills and in their exhibits these facts appear: Maria Louisa Easby and Annie H. W. Wilson were sisters. Mrs. Easby lived in Portsmouth, Virginia, and Mrs. Wilson in Bel Air, Maryland. On August 6, 1901, Mrs. Easby borrowed from Mrs. Wilson $3,500. As evidence thereof she and her husband gave to Mrs. Wilson their note for said sum due three years therefrom with interest at the rate of 6 per cent. It was secured by a trust deed, duly recorded, in which certain real estate in the city of Portsmouth was conveyed to E. A. Warner, Trustee, in trust for that purpose by these debtors. That deed also bears date August 6, 1901, and was recorded on August 7th following. This debt was not paid by Mrs. Easby, who died in 1928, having first executed a will of date May 17, 1928, and probated on August 14th of that year. In it, among other provisions, is this:

"A mortgage on 216 North Street belongs to my sister, Annie H. W. Wilson. She is to be paid out of the estate. She also has the use of all money during her life, and if she care to sell can do so. At my sister's death, the remaining money or property, goes to Nannie Butt and Margaret Watmough. Effingham St. house to Nannie Butt, and Queen Street flats to Margaret Watmough and all the mahogany or dark furniture she may care for—Also Canton China and Crescent pearl pin. If in need of Effingham or Queen Street property sister comes first and can sell."

After this, bits of tangible personal property of small pecuniary value were given to a number of other legatees. Then follows this closing clause:

"The residue of my estate to be used at my sisters' discretion.

"Appointing her Executrix without bond or security."

Mrs. Wilson declined to qualify and at her request J. W. F. Butt was appointed administrator with will annexed. Afterwards, and for reasons satisfactory to themselves, she and Nannie Butt and Margaret Watmough executed this contract:

"THIS CONTRACT, made this 30th day of March, 1929, between Annie W. Wilson of Bel Air in the County of Harford, and State of Maryland, party of the first part, and Nannie Louise Page Butt (unmarried) and Margaret Susan Watmough (formerly Margaret Susan Butt) of the City of Portsmouth, Virginia, parties of the second part.

"WITNESSETH, THAT:

"WHEREAS, the party of the first part is the holder of a certain promissory negotiable note dated August 6, 1901, made by William Easby and Maria Louisa Easby payable to Annie W. Wilson three years after date, for the principal sum of Thirty-Five Hundred Dollars ($3,500.00) with interest and secured by a deed of trust of even date therewith made by the said William Easby and Maria Louisa Easby to Aleck E. Warner, Trustee, and duly of record in the Clerk's Office of the Court of Hustings of the City of Portsmouth, Va., in Deed Book 41, p. 469, to which reference is hereby made; and

"WHEREAS the said William Easby and Maria Louisa Easby have departed this life and the parties hereto are beneficiaries under the Will of the said Maria Louisa Easby dated May 17, 1928, and recorded in the Clerk's Office of the Circuit Court of the City of Portsmouth on August 14, 1928 and desire to settle all questions, if any, which may arise as to their rights by virtue of said deed of trust and will, and to agree upon and fix such rights, as well as to provide for the management and sale of the property devised by Maria Louisa Easby.

"NOW THEREFORE, in consideration of the premises and of the sum of Five Dollars ($5.00) in hand paid by each of the parties hereto to the other, the receipt whereof is

hereby acknowledged, the parties hereto contract, covenant and agree as follows:

1.

"The aforesaid note owned by Annie W. Wilson constitutes and shall continue to constitute a valid first lien upon the property on which it is secured and, with six per cent interest thereon from August 6, 1928, shall be first paid out of the proceeds of the sale of said property, or out of the proceeds of the sale of said property, belonging to the estate of the said Maria Louisa Easby.

2.

"The property belonging to the said Maria Louisa Easby shall be managed, until sold, and sold by the party of the first part as soon as practicable. Out of the proceeds of sale she shall pay (a) all debts due by the said Maria Louisa Easby together with funeral expenses and the cost of administering her estate and (b) to herself the sum of $3,500.00 with interest from August 6, 1928, secured as aforesaid. Until the property has been sold she shall receive the rents and revenues therefrom and apply the same to the payment of (1) taxes and fire insurance premiums, (2) debts due by the said Maria Louisa Easby and funeral and administration expenses, (3) expenses incurred in keeping the improvements on said property in proper order, and (4) interest on the aforesaid debt of $3,500.00.

"The remainder of the revenues derived from said property shall be retained by the party of the first part as the life tenant, for her own use and benefit.

3.

"The party of the first part may sell the aforesaid property or any part thereof at a price or prices agreed upon by the parties hereto, and the parties of the second part shall unite in all necessary conveyances.

4.

"The proceeds of the sale of the property, if sold, shall be applied first to the payment of debts, funeral and administration expenses as aforesaid and next to the payment

of the aforesaid $3,500.00 with interest thereon from the 6th day of August, 1928. The remainder thereof shall be invested in such securities as are agreed upon by the parties hereto. Said securities with an executed copy of this contract shall be deposited with the American National Bank, Portsmouth, Va., to be held and disposed of by said Bank in accordance with the provisions of this agreement, subject to its regular charges for the services performed by it.

5.

"The party of the first part shall, during her life, be entitled to and shall keep all income derived from the proceeds of the sale of said property, if sold, and at her death said proceeds of sale, after the payment of the said sum of $3,500.00, and interest, shall be paid and delivered to the said Nannie Louise Page Butt and Margaret Susan Watmough in equal shares.

6.

"If said property has not been sold during the lifetime of the party of the first part it shall be sold at her death by the parties of the second part and the aforesaid indebtedness of $3,500.00 and interest shall be paid therefrom, and the remainder thereof shall be delivered to the parties of the second part, their heirs and assigns.

"IN TESTIMONY WHEREOF, the parties hereto have hereunto set their hands and seals.

ANNIE W. WILSON,                    (Seal)
NANNIE LOUISE PAGE BUTT,        (Seal)
MARGARET SUSAN WATMOUGH, (Seal)."

It was said in argument that there is error in the printed copy of this contract appearing in the record. In article 1 of it is written "proceeds of the sale of *said* property." This should read "proceeds of the sale of *any other* property."

Matters then drifted. Mrs. Wilson died in 1934, having first executed a will of date May 20, 1932, to which a codicil was added on October 31, 1933. William W. Wilson, her husband, and Fannie Hopkins Silver were named as her

executors. Mr. Wilson renounced the will and elected to take in lieu thereof that share in the real and personal estate of his wife which the laws of Maryland gave him.

J. W. S. Butt, administrator as aforesaid, Nannie Louise Page Butt, and Margaret Susan Watmough, residuary legatees of Mrs. Easby, now refuse to pay that debt. They say that it and the trust deed securing it are barred by the statute of limitations. To enforce its collection, this suit is brought. The plaintiffs, William W. Wilson, in his own right and as executor of Annie H. W. Wilson, deceased, Fannie Hopkins Silver, in her own right and as executrix of Annie H. W. Wilson, deceased, Annie Wheeler Hopkins and Holy Trinity Protestant Episcopal Church, Churchville, Maryland, a religious organization, are the personal representatives and legatees of Mrs. Wilson. Respondents, J. W. S. Butt, J. W. S. Butt, Administrator, Nannie Louise Page Butt, and Margaret Watmough, are the personal representatives and legatees of Mrs. Easby other than Mrs. Wilson, who was herself a legatee.

There can be no doubt but that Mrs. Easby desired this debt to be paid. That desire is evidenced by her will quoted *supra*. If the North Street property did not satisfy the needs of Mrs. Wilson, then she was given the right to go against the Effingham Street house given to Nannie Butt and the Queen Street flats given to Margaret Watmough. In the language of the will itself "sister comes first."

In the amended bill, it is said that Mrs. Wilson and complainants here have complied with all the obligations imposed upon them by the will or contract.

The foregoing facts are set out in complainants' bill, amended bill and exhibits filed therewith.

■■ In our approach this settled rule is to be remembered: The intention of a testator, expressed in the will itself, must be respected and must be complied with whenever it is possible, unless it runs counter to some positive rule of law or is against good morals or public policy.

This debt, due three years after date, became due on August 6, 1904. Mrs. Easby died in 1928.

In Code, section 5827, as amended by Acts 1934, ch. 297, p. 478, are these provisions:

"No deed of trust or mortgage heretofore or hereafter given to secure the payment of money and no lien heretofore or hereafter reserved to secure the payment of unpaid purchase money, shall be enforced after twenty years from the time when the original obligation last maturing thereby secured shall have become due and payable; provided that the period of one year from the death of any party in interest shall be excluded from the computation of time, but the limitations prescribed by this section may be extended by an endorsement to that effect, entered prior to the expiration of the limitation period prescribed herein upon the margin of the page of deed book on which the same is recorded."

The lien of this trust deed was not extended in the manner provided for by statute and so went out of being on August 6, 1924, more than two years before Mrs. Easby's death. Since it was not extended, it could not as such thereafter be revived (*Cohen v. Jenkins*, 125 Va. 635, 100 S. E. 678), unless possibly some principle of estoppel can be invoked or some fraud has been practiced.

It cannot be enforced after twenty years have passed and in this respect the statute differs from that which governs the right to sue upon an ordinary promise to pay. Code, section 5810. In this latter case the provision is that no action "shall be brought" after a designated date. The debt is not cancelled, and there is no presumption of payment. It remains as an abiding moral obligation.

"The familiar and uncontradicted rule that upholds a new promise after the bar of the Statute of Limitations has often been expressly put upon the ground that, though the debt is not legally enforceable, there is still a moral obligation which comes within the exception to the general rule, and

is sufficient to sustain the new promise." Note, 17 A. L. R., p. 1334, where a host of authorities are cited to sustain this rule.

Ordinarily a deed of trust has in it no promise to pay and carries with it no moral obligation, both of which attach to notes and bonds and are not wiped away by statutes of limitation.

In said Code, section 5810, it is provided that there shall be no right of action "against the estate of any person hereafter dying, or upon any such award or contract, which shall have accrued at the time of his death, or the right to prove any such claim against his estate in any suit or proceeding, shall not in any case continue longer than five years from the qualification of his personal representative, or if the right of action shall not have accrued at the time of decedent's death, it shall not continue longer than five years after the same shall have so accrued."

This suit was instituted on the first Monday in September, 1935. When Mrs. Easby died, the debt as such was already barred by the statute of limitations, and if we treat it as being revived by the will, it is still out of date if it be but a debt without more to be enforced against her estate.

Let us concede that there was no longer any deed of trust lien and that collection of the debt itself was barred by the statute of limitations. It nevertheless remained a moral obligation. Plainly from the will it appears that Mrs. Easby wished it to be paid and to be paid no matter what effect that payment might have on other legatees or devisees; "sister comes first." We think also it is plain that she intended the North Street property should be used as a primary source from which payment was to be obtained.

There is no reason to believe that she did not know that it was out of date, but suppose she did not. That was a mistake of law for which equity gives no relief save in extraordinary cases. *Lockard* v. *Whitenack*, 151 Va. 143, 144 S. E. 606; 2 Pomeroy's Equitable Remedies, section 659.

██ It follows from what has been said that Mrs. Wilson, upon the death of her sister, had the clear right to enforce her claim, whether it was regarded as a legacy or as a debt directed by the testatrix to be paid. Moreover, she had the right to proceed against those parcels of real estate given to Nannie Butt and to Margaret Watmough, and this right obtained when the contract of May 30, 1929, was executed.

This right immediately affected and pressed upon these legatees.

██ ██ Was the contract without consideration? We are dealing with a demurrer. It is under seal and therefore purports consideration. Moreover it appears that five dollars cash in hand was paid. Again there might have been some doubt about Mrs. Wilson's right to assert her claim against the decedent's estate generally. That right this contract conceded.

The will of Mrs. Easby gave to Mrs. Wilson,—

"A mortgage on 216 North Street belongs to my sister, Annie H. W. Wilson. She is to be paid out of the estate. She also has the use of all money during her life, and if she care to sell can do so. * * * If in need of Effingham or Queen Street property sister comes first and can sell. The residue of my estate to be used at my sister's discretion."

And then made this provision for these legatees:

"At my sister's death, the remaining money or property, goes to Nannie Butt and Margaret Watmough. Effingham Street house to Nannie Butt and Queen Street flats to Margaret Watmough and all the mahogany or dark furniture she may care for—also Canton china and crescent pearl pin."

If we concede that the lien of the trust deed was dead when the will was executed, the debt which it evidenced was nevertheless made a specific charge against the North Street property and ultimately a charge against the lots devised to these two legatees, which in substance they might ultimately have had in part to pay.

What rights did they take under the contract which the will did not give them?

Under it sale could be made only "at a price or prices agreed upon by the parties hereto." This was a limitation which the will did not impose upon Mrs. Wilson, and it was a right which the legatees did not theretofore have.

The contract further provides that if said property be sold the proceeds of sale "shall be applied first to the payment of debts, funeral and administration expenses as aforesaid and next to the payment of the aforesaid $3,500 with interest thereon from the 6th day of August, 1928. The remainder thereof shall be invested in such securities as are agreed upon by the parties hereto. Said securities with an executed copy of this contract shall be deposited with the American National Bank, Portsmouth, Va., to be held and disposed of by said Bank in accordance with the provisions of this agreement, subject to its regular charges for the services performed by it."

This, too, was new matter.

The contract foresaw as a possibility that Mrs. Wilson might not sell during her lifetime.

"If said property has not been sold during the lifetime of the party of the first part it shall be sold at her death by the parties of the second part and the aforesaid indebtedness of $3,500.00 and interest shall be paid therefrom, and the remainder thereof shall be delivered to the parties of the second part, their heirs and assigns."

Here, too, we have a provision not written into the will which made clear the rights of these legatees under a contingency not theretofore provided for. Moreover, while the contract itself does not in terms so provide, it amounts in substance to a waiver on Mrs. Wilson's part of the right to enforce as a general debt against the estate a claim which the will recognized and ordered to be paid, and it is for this reason that she and those who claim under her have not at an earlier date proceeded to assert their testamentary rights.

■ When the contract was written, Mrs. Wilson had then the right to collect her claim. No statute of limitations could then have been interposed. It was because of this contract that action was postponed and that delay was one of its manifest purposes. Having been invited to do this, it would be in substance a fraud to hold that action now comes too late. Fraud may not have been intended but that cannot affect its effect. Since the contract is valid and amply supported, respondents are now estopped to question its purpose, which was, as we have seen, for a time at least, to hold matters *in statu quo* and to prevent the necessity of any immediate and final settlement of this decedent's estate.

■ It is further said in the demurrer that no account has been filed with the bill showing that Mrs. Wilson and those claiming under her have complied with the contract and have done those things which they promised to do. And in their brief it is said that about $6,000 has been collected and has not been accounted for.

Complainants' in their amended bill say that every obligation imposed upon Mrs. Wilson or those claiming under her either by the will or by the contract has been met. It would not have been possible for them to do more unless they had undertaken to there state an account covering a five-year transaction and dealings which amounted to thousands of dollars. We think this allegation of the bill on demurrer is sufficient.

■ This demurrer should have been overruled and for another reason. If it be true that complainants have no enforceable claim against the estate of Mrs. Easby arising out of said debt, then Mrs. Easby's estate is to that extent augmented, and the residuary legatee's interest therein is correspondingly increased. That residuary legatee was Mrs. Wilson, for whom this provision was made, "the residue of my estate to be used at my sister's discretion." Against such a claim the five-year statute, Code, section 5810, *supra*, does not apply.

Nothing has been heard upon the merits of this cause. We

have merely taken as true complainants' allegations. They may be unsupported at a hearing on the merits. We now hold that the demurrer should have been overruled and that such a hearing must be had. The decree appealed from should be reversed and the cause remanded.

*Reversed and remanded.*