# Richmond

PIEDMONT TRUST BANK, ADMINISTRATOR OF THE ESTATE OF PAMELA M. STANFORD, DECEASED, PIEDMONT TRUST BANK, ADMINISTRATOR OF THE ESTATE OF ELIZABETH ANN STANFORD, DECEASED, AND PIEDMONT TRUST BANK, ADMINISTRATOR OF THE ESTATE OF DAVID THOMAS STANFORD, DECEASED v. THE AETNA CASUALTY AND SURETY COMPANY, AND JAMES L. CARTER, SERGEANT, CITY OF MARTINSVILLE, VIRGINIA, COMMITTEE FOR ERNEST LACY BRIDGES, A CONVICT.

December 1, 1969.

Record No. 7007.

Present, All the Justices.

*John D. Epperly (Broaddus, Epperly, Broaddus & Williams,* on brief), for appellants.

*William F. Stone; David B. Worthy (Stone, Joyce and Worthy, on brief), for appellees.*

HARMAN, J., delivered the opinion of the court.

On September 1, 1963, an automobile collision occurred at Bassett Forks in Henry County, Virginia. This accident was due solely to the negligence of Ernest Lacy Bridges, the driver of one of the vehicles. Bridges was an uninsured motorist, as defined by § 38.1-381 of the Code of Virginia, 1950, as amended.

The other motor vehicle was owned by Ernest A. Hooker and was driven by David Leslie Hooker, his son. David Leslie Hooker and the other three occupants of his vehicle, namely, Pamela M. Stanford, David Thomas Stanford and Elizabeth Ann Stanford, were killed as a result of this accident.

The Hooker vehicle was insured by The Travelers Insurance Company and the policy contained uninsured motorist coverage as required by § 38.1-381 of the Code of Virginia, 1950, as amended.

Elizabeth Ann Stanford was a member of the household of David T. Stanford, her father, who had an automobile insurance policy issued by The Aetna Casualty and Surety Company, which contained uninsured motorist coverage as required by Virginia law.

David Thomas Stanford maintained his own household, of which his wife, Pamela M. Stanford, was a member, and had an automobile liability insurance policy issued by The Aetna Casualty and Surety Company with uninsured motorist coverage as provided by Virginia law.

David T. Stanford, the father of Elizabeth Ann Stanford and David Thomas Stanford and the father-in-law of Pamela M. Stanford, secured the appointment of the Piedmont Trust Bank as Administrator of the estates of the aforesaid three decedents and actively assisted the administrator in an effort to collect any damages which might be recovered as a result of the death of these decedents.

Mr. Stanford consulted with the local agent who represented both The Aetna Casualty and Surety Company and The Travelers Insurance Company and was advised by the agent that the only insurance coverage available was under the Travelers policy issued to Hooker.

Shortly thereafter, an insurance adjuster representing both The Aetna Casualty and Surety Company and The Travelers Insurance Company met with Mr. Stanford, and again Mr. Stanford was advised that the total available coverage was under the Travelers policy

and that the Aetna policies issued to David T. Stanford and David Thomas Stanford were not applicable to the accident.

After receiving this advice from the adjuster, Mr. Stanford then contacted a friend, who was also the attorney for The Travelers Insurance Company and The Aetna Casualty and Surety Company, and made inquiry as to whether or not it was possible to recover more than the thirty thousand dollars provided in the Travelers contract for the deaths of the four decedents. He was advised by the attorney that it was his opinion that it was not possible to recover more than the thirty thousand dollars provided by the Travelers contract on the Hooker vehicle and that it was unnecessary to get a judgment against Bridges because Bridges was insolvent, owned nothing, and no recovery could be had against him even if a judgment was obtained.

This advice was given based upon the holding of the United States Court of Appeals for the Fourth Circuit in the case of *Travelers Indemnity Company* v. *Wells*, 316 F. 2d 770, which was decided in April, 1963.

Thereafter Mr. Stanford and a representative of the administrator, at the suggestion of the attorney for Travelers and Aetna, contacted an expert in the field of insurance coverage who was in no way connected with Travelers or Aetna. This outside expert expressed the same opinion as the agent, the adjuster and counsel for the two insurance companies.

The administrator and Mr. Stanford thereafter agreed to accept the sum of $7,500 in settlement of the death claim of each of the three Stanford decedents.

Judgments for $7,500 were entered by agreement on separate motions for judgment brought in the Circuit Court of Henry County to recover for the wrongful deaths of the three Stanford decedents and Hooker. These judgments were entered on January 3, 1964, and were satisfied on the same day.

On March 8, 1965, approximately fifteen months later, in the case of *Bryant* v. *State Farm Mutual Insurance Company*, 205 Va. 897, 140 S.E. 2d 817, we held that the "other insurance" provision of the policy in that case was invalid because it was in conflict with § 38.1-381, Code of Virginia, 1950, as amended.

The effect of this decision was to nullify the holding in the *Wells* case and to determine that the uninsured motorist coverage, where multiple policies were involved, was cumulative instead of exclusive.

When the decision of the *Bryant* case came to the attention of the administrator and Mr. Stanford, petitions for declaratory judgment

were filed in the Circuit Court of Henry County by the administrator on June 9, 1965, against The Aetna Casualty and Surety Company and The Travelers Insurance Company.

The petition in each case alleged substantially the above facts and concluded that by reason of a mutual mistake and constructive fraud, the complainant administrator accepted a settlement from The Travelers Insurance Company of $7,500 for the wrongful death of each of the Stanford decedents under the mistaken belief that the coverage of The Aetna Casualty and Surety Company did not extend to protect such decedents. The petitions further alleged that the coverage under The Aetna Casualty and Surety policy issued to David T. Stanford was available to the estate of Elizabeth M. Stanford, a member of his household, and that coverage under the policy issued by Aetna to David Thomas Stanford was available to his estate as well as to the estate of Pamela M. Stanford, who was a member of his household.

Each petition concluded with a prayer that the "settlement" be set aside and the parties restored to their prior rights.

The petition in each case was transferred from the law docket to the chancery docket by the Circuit Court of Henry County, Virginia, and subsequently amended bills containing substantially the same allegations were filed and the suits were consolidated by the court. Travelers, which was an original party, did not seek reimbursement, and was dismissed from the proceeding.

A demurrer was filed which was sustained by the court and a final decree sustaining the demurrer and dismissing the consolidated suit was entered on March 25, 1968.

In the petition for appeal and oral argument, it was conceded that no actual fraud was alleged but the appellant must necessarily rely on either mutual mistake or constructive fraud to sustain its position.

■ First, let us deal with the question of constructive fraud raised by the pleadings.

It is regarded as fundamental that fraud cannot be predicated upon what amounts to a mere expression of an opinion. *Henning v. Kyle*, 190 Va. 247, 252, 56 S. E. 2d 67, 69 (1949); *Poe v. Voss*, 196 Va. 821, 825, 86 S.E. 2d 47, 49 (1955).

Here, under the facts set forth in the pleadings, we are clearly dealing with an expression of opinion by the representatives of the insurance companies.

At the time of the negotiations and discussions which resulted in the agreed judgments of January 3, 1964, there had been only one

appellate decision dealing with the "other insurance" provision contained in the standard Virginia form of automobile insurance, the decision of the United States Court of Appeals for the Fourth Circuit in *Wells*. At that time this court had not ruled on the question.

The decision in *Wells* was not binding precedent but was only persuasive authority. It represented the opinion of the United States Court of Appeals for the Fourth Circuit on the validity of the "other insurance" provision in a Virginia insurance policy that had been issued pursuant to statute.

Until such time as this court spoke, the validity of the "other insurance" provision was not a matter susceptible of exact knowledge or interpretation and could only be the subject of an opinion.

■ The appellants' pleadings, alleging constructive fraud, were fatally defective in another respect. In its final pleading, appellants allege "16. Further inquiry was made for the administrator concerning the coverage . . . from an expert in the insurance field. . . . And the expert advised to the same effect as that advice given by . . ." the representatives of the insurance companies.

It is well established in Virginia that one who seeks to hold another in fraud must clearly show that he relied upon the acts and statements of the other, and he must be held not to have so relied when it appears that he has made his own investigation, whether complete or not, into the subject matter at hand. *Poe* v. *Voss, supra; DeJarnett* v. *Brooks Lumber Co.*, 199 Va. 18, 97 S.E. 2d 750 (1950); and *Harris* v. *Dunham*, 203 Va. 760, 127 S.E. 2d 65 (1962).

From appellants' pleadings, it affirmatively appears that appellants did not rely on the opinions expressed by the representatives of the insurance companies but conducted their own independent investigation by seeking and obtaining the opinion of an outside expert. Hence the element of reliance, an essential element of fraud, was absent and, in those circumstances, there could be no fraud. Thus the bill was properly subject to demurrer.

■ We must now consider the closely associated allegation of mutual mistake presented by the pleadings. In this connection, it should be noted that every fact necessary to be known to form a correct conclusion as to the question of law to be decided was known to both the appellants and to the representatives of the insurance companies.

". . . A court of equity may grant relief where the mistake is one of fact, but it would be liable to the greatest abuse to permit one to reclaim his property upon the mere pretense that at the time of

parting with it he was ignorant of the law affecting his title. The wisdom of the rule which forbids it is founded in sound wisdom and policy. *Zollman* v. *Moore, et al.*, 21 Gratt. 313; and *Wimbish* v. *Commonwealth*, 75 Va. 839." *Throckmorton* v. *Throckmorton*, 91 Va. 42, 50, 22 S.E. 162, 164 (1895).

A court of equity will not grant relief to a party against a judgment where such party was prevented from making his defense at law by a mistake of law, although it was a mutual mistake by both parties. *Richmond* and *Petersburg Railroad Company* v. *Shippen*, 2 Patton, Jr., and Heath 327 (Special Ct. of App., Va., 1856).

Where there is nothing in the record to suggest fraud, and the mistake is that of counsel for the defendant, and for which the plaintiff was not responsible, the judgment will not be set aside by a court of equity. *Lockard* v. *Whitenack*, 151 Va. 143, 144 S.E. 606 (1928).

See also 11 Mich. Jur., Judgments and Decrees § 131, p. 167.

In *Wilson* v. *Butt*, 168 Va. 259 at 268, 190 S.E. 260 at 264 (1937), we continued to recognize the rule that equitable relief would not be granted for mistakes of law except in extraordinary cases. See also 30A Am. Jur., Judgments § 770, at p. 714.

In the present case the appellants rely upon a number of Virginia cases, all of which can be easily distinguished.

*Logwood* v. *Holland*, 131 Va. 186, 108 S.E. 571 (1921), involved a mistake of fact, namely the number of trees in an orchard. *Seaboard Ice Company, Inc.* v. *Lee*, 199 Va. 243, 99 S.E. 2d 721 (1957), also involved a mistake of fact, that is the nature and extent of the disability of one of the parties to a release.

*Waggoner* v. *Waggoner*, 111 Va. 325, 68 S.E. 990 (1910), was distinguished by the court in its opinion since it involved a presumption arising under a rule of equity, which is treated as a mistake of fact rather than a mistake of law.

*Webb* v. *City Council of Alexandria*, 33 Gratt. (74 Va.) 168 (1880), recognized the general rule that a mistake of law would not ordinarily afford equitable relief and after dealing at some length with the peculiar circumstances and facts involved said at page 177 "It cannot, therefore, be said that the appellee is seeking relief upon the ground of a mistake in law."

*Burton* v. *Haden*, 108 Va. 51, 60 S.E. 736 (1908), involved unusual equitable circumstances. The court, in the opinion, placed it outside of the general rule because there was a mistake of a private legal interest rather than a mistake as to a general rule of law.

As was noted earlier, the pleadings show that every fact necessary to be known to form a correct conclusion as to the question of law was known to both the appellants and the representatives of the insurance company.

It is our conclusion that the bill in this case fails to set forth the extraordinary circumstances which would entitle the appellants to relief. We therefore conclude that the decree of the Circuit Court of Henry County should be affirmed.

*Affirmed.*