**Stanley HERSHFANG, Plaintiff,**

v.

**J. Calvin KNOTTER, et al., Defendants.**

**Civ. A. No. 82–0318–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

April 25, 1983.

Richard J. Stull, Stull, Stull & Brody, New York City, Paul Vance Hartke, Hartke & Hartke, Falls Church, Va., for plaintiff.

Lewis T. Booker, L. Neal Ellis, Jr., Hunton & Williams, Richmond, Va., Skadden, Arps, Slate, Meagher & Flom, New York City, Michael W. Smith, R. Harvey Chappell, Jr., Christian, Barton, Epps, Brent & Chappell, R. Harvey Chappell, Jr., Paul W. Jackobs, II, Richmond, Va., James S. Cremins, Asst. Gen. Counsel, CSX Corp., Garth E. Griffith, Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

This matter comes before the Court on cross motions for summary judgment. Plaintiff, alleging securities fraud and breach of fiduciary duty, invokes the Court's jurisdiction pursuant to § 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78aa, and the Court's pendent jurisdiction over state law claims. The parties have stipulated that plaintiff is a citizen of New York and all defendants are citizens of states other than New York; the amount in controversy exceeds $10,000, exclusive of interest and costs; thus, plaintiff properly also invokes the Court's jurisdiction over his state law claims pursuant to 28 U.S.C. § 1332.

### I. Background

As of May 20, 1982, plaintiff was the beneficial owner of 150 shares of the common stock of Carolina, Clinchfield & Ohio Railway ("CC & O"), a Virginia corporation. He brings this suit against six former directors of CC & O and against CC & O itself. Two of the individual defendants had been officers as well as directors of CC & O. Plaintiff also sues CSX Corporation ("CSX"), a Virginia corporation formed as a consequence of the merger of the Chessie System, Inc. and Seaboard Coast Line Industries ("Seaboard").

At a special meeting of CC & O shareholders on June 25, 1982, the shareholders

approved[1] a plan of exchange of stock with CSX whereby CSX would acquire ownership of CC & O. On May 20, 1982, each CC & O shareholder of record as of May 7, 1982 was sent a packet of material concerning this special meeting, including a proxy statement which also functioned as CSX's prospectus for its issuance of shares in the proposed exchange. Plaintiff contends that these materials, which will be referred to collectively as the proxy materials, were materially misleading in violation of §§ 10(b) and 14(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78n(a), and the regulations and rules promulgated thereunder, notably Rule 10b–5, 17 C.F.R. § 240.10b–5, and Rule 14a–9, 17 C.F.R. § 240.14a–9. He also contends the exchange was fraudulent and in violation of the individual directors' fiduciary duties because of alleged material omissions from the proxy materials.

This action was commenced in the United States District Court for the Eastern District of New York. It was transferred by that Court to this District pursuant to 28 U.S.C. § 1404(a) on stipulation of the parties. The plaintiff then filed an amended complaint which, like the original complaint, sought to preliminarily enjoin CSX's acquisition of CC & O and sought to proceed as a class action. By order of June 14, 1982, the Court denied class certification and expressed its view that preliminary injunctive relief would be inappropriate in light of the lack of irreparable injury.

The record reflects the following:

Prior to June 26, 1982, CC & O was a public corporation whose shares were listed for trading on the New York Stock Exchange. Thus, CC & O stock had to be registered in accordance with § 12 of the Exchange Act, 15 U.S.C. § 78l. Section 14(a) of the Act applies to such registered securities, and section 10(b) applies to securities listed on a national securities exchange (among others). Thus, the May 20, 1982 proxy materials were covered by § 14(a) and Rule 14a–9, and the June 25, 1982 exchange approved by the shareholders was covered by § 10(b) and Rule 10b–5.

On October 16, 1924, CC & O leased all of its property, real, personal, and mixed, to Atlantic Coast Line Railroad Co. and Louisville & Nashville Railroad Co. for a term of 999 years. Both of the lessees subsequently became part of or were owned by Seaboard Coastline Railroad, one of the components of the present CSX. Thus, CSX essentially was the lessee of all of CC & O's property as of June 25, 1982. Most of the omissions plaintiff alleges to exist in the proxy materials relate to this lease.

The effect of the exchange transaction was, of course, to render the lease nugatory, since CSX became in effect both lessor and lessee. In general, plaintiff's principal theory is that prior to the exchange, the conditions of the lease had been breached in various ways, so that the leased property had reverted to CC & O. He asserts that the value of this property far exceeded the value of the lease, as represented by the payments CSX was to make to CC & O under the lease. Thus, plaintiff contends the value of the lease is not an accurate measure of what CSX obtained in the exchange, but rather CSX obtained the underlying assets which belonged to CC & O following the alleged breach. He seeks to hold defendants liable for failing to disclose the fact of the breach, the actions constituting the breach, and his contended result of the breach.

## II. *Nonreliance*

Before addressing the substance of the alleged omissions, the Court must consider a threshold question raised by defendants. They say they cannot be liable under the federal securities laws or, to the extent

1. The parties have stipulated that the votes at the meeting were tallied by representatives of Chemical Bank who reported that of the 250,000 shares outstanding, the following votes were cast: 188,814 shares, or 75.53% of the outstanding shares, in favor of the plan of exchange; 36,274, or 14.51% of the outstanding shares, against the plan; 454 abstaining. Plaintiff has challenged the official tally of votes; it is not clear whether at this point he persists in his challenge. But the Court is satisfied that the challenge, if any, is not material to resolution of the instant motions.

plaintiff has alleged it, under a theory of common law fraud,[2] because the uncontroverted facts establish plaintiff did not rely on the proxy materials in deciding how to vote on whether to, in effect, sell his CC & O stock and buy CSX stock in the exchange. The parties have stipulated that plaintiff voted against the exchange transaction. Moreover, defendants have submitted deposition testimony and exhibits,[3] including the original complaint (filed March 17, 1982), indicating that before the proxy materials went out on May 20, 1982, plaintiff was aware of most of the matters he now alleges were wrongfully omitted from the proxy materials. Plaintiff does not dispute the contention that he did not rely on the materials, but contends that his nonreliance does not, under the applicable law, defeat his claim.

Defendants acknowledge that in light of *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), and *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), plaintiff does not have to prove reliance as part of his cause of action. However, defendants cite *Rochez Brothers, Inc. v. Rhoades,* 491 F.2d 402, 410 (3d Cir.1973), and a line of cases following it, *see, e.g., Carras v. Burns,* 516 F.2d 251, 257 (4th Cir.1975), for the proposition that if the defendants can affirmatively establish that the plaintiff did not rely on the materials, then the defendants will prevail for having proved a lack of causation. Simply stated, the defendants contend that where the violation was not the proximate cause of the alleged loss, there can be no recovery.

This line of cases, in the Court's view, though initially appealing, is of limited usefulness to the defendants. As to plaintiff's

claim under § 10(b) of the Exchange Act and Rule 10b–5, this principle does indeed work to defeat any liability with regard to the "purchase" of CSX stock in the exchange transaction. However, the element of reliance clearly does not apply to plaintiff's § 10(b) claim to have been a "forced seller" of his CC & O stock. *See Vine v. Beneficial Finance Co.,* 374 F.2d 627, 635 (2d Cir.), *cert. denied,* 389 U.S. 970, 88 S.Ct. 476, 19 L.Ed.2d 460 (1967).

■ Reliance is, under Virginia law, an established element of fraud. *See, e.g., Piedmont Trust Bank v. Aetna Casualty & Surety Co.,* 210 Va. 396, 400, 171 S.E.2d 264, 267 (1969); hence, having proved nonreliance, defendants cannot be liable for common law fraud. Nevertheless, proving nonreliance does not, standing alone, defeat plaintiff's state law claim for breach of fiduciary duty.

The more complex question before the Court is the effect of nonreliance on plaintiff's claim under § 14(a) of the Exchange Act. Defendants cite *Gaines v. Haughton,* 645 F.2d 761, 773–74 (9th Cir.1981), *cert. denied,* 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982), as holding that one who does not grant a proxy based on allegedly misleading proxy materials does not have standing under § 14(a) to challenge such materials. *See also Jacobs v. Airlift International, Inc.,* 440 F.Supp. 540, 542 (S.D.Fla. 1977). Plaintiff cites *Lynch v. Fulks,* [1981 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,831 (D.Kan.1980), as holding to the contrary. *See also Leff v. CIP Corp.,* 540 F.Supp. 857, 865–66 (S.D. Ohio 1982).

■ The concepts of standing, materiality, reliance, and causation in securities law have become hopelessly intertwined. At

---

**2.** In paragraph 11 of the amended complaint, plaintiff alleges the exchange was "fraudulent." It is not clear whether plaintiff intends to allege common law fraud or statutory fraud under the securities laws. The Court assumes for purposes of the instant motions that plaintiff intends to allege both. The amended complaint does not make explicit reference to the securities laws after the first numbered paragraph. Since fraud must be alleged with particularity, *see* Fed.R.Civ.P. 9(b), the Court assumes that

the more specific allegations in the subparts of paragraph 11 of the amended complaint are intended to apply to plaintiff's statutory securities fraud claims. Otherwise, the amended complaint would be deficient as to those claims.

**3.** *See* Deposition of Stanley Hershfang, CC & O Defendants' Exh. 23, at 3–4, 8–14, 16, 18, 27, 31, 70; CSX Defendants' Exh. 1.

the risk of compounding this escalating reification,[4] the Court perceives a distinction between the issue of standing, which is the source of apparent conflict in the cases just cited, and the issues of reliance and causation. The principle set forth in *Rochez Brothers, supra,* that proving nonreliance negates any possibility of causation in a Rule 10b–5 action, is inapposite to a Rule 14a–9 claim, because such a claim employs a different standard of causation from that applied in a Rule 10b–5 claim. A Rule 14a–9 claim requires only a showing of "transactional causation": that the proxy solicitation itself, not the alleged defect in the solicitation, was an essential link in the transaction. *See, e.g., Mills v. Electric Auto-Lite Co.,* 396 U.S. at 385, 90 S.Ct. at 622. In the instant case, there can be no doubt that the transaction required shareholder approval which, in turn, required the proxy solicitation. Thus transactional causation existed regardless of whether plaintiff relied on the proxy materials.

■ The cases dealing with standing must, then, be considered in isolation from the 10b–5 cases dealing ultimately with causation. As the principle of transactional causation suggests, the nature of a § 14(a) violation is broad: "the deception of others by the alleged material omissions in the ... proxy statement may have caused damage to plaintiff by misleading others into voting to approve the [transaction] at an allegedly unfair price." *Jones v. National Distillers & Chemical Corp.,* 484 F.Supp. 679, 684 (S.D.N.Y.1979). The Court concludes that because of such possible injury, plaintiff has standing to assert his § 14(a) claim despite his apparent lack of reliance. *Id.; accord, Clayton v. Skelly Oil Co.,* [1977–1978 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,269 (S.D.N.Y.1977).

### III. *Materiality and Full Disclosure*

Defendants' primary contention is that the alleged omissions either do not exist or are not material under the materiality standard for the securities laws:

> An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote. This standard is fully consistent with *Mills'* general description of materiality as a requirement that "the defect have a significant *propensity* to affect the voting process." It does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote. What the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.

*TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976) (footnote omitted) (emphasis in original). While this standard was formulated in a Rule 14a–9 action, it applies as well to actions under Rule 10b–5. *See, e.g., Dower v. Mosser Industries, Inc.,* 488 F.Supp. 1328, 1334 (E.D.Pa.1980), *aff'd,* 648 F.2d 183 (3d Cir.1981).

The material omissions that plaintiff alleges[5] may be grouped broadly under two categories. Most are related to the lease

---

**4.** For an enlightening discussion of the idiocies and intricacies that result when courts and commentators try to impose rigid classification schemes on inherently nebulous situations, see Kelman, *Interpretive Construction in the Substantive Criminal Law,* 33 Stan.L.Rev. 591 (1981).

**5.** Counsel for plaintiff has submitted his own affidavit in support of plaintiff's motion for summary judgment. Counsel acknowledges that for a number of reasons, the Court cannot

properly consider this affidavit as providing factual support for plaintiff's motion. Both parties have, however, treated the affidavit as a memorandum of law and argument in support of plaintiff's motion. The affidavit sets forth several allegations of material omissions beyond those included in the amended complaint. To the extent Fed.R.Civ.P. 9(b) requires plaintiff to *plead* fraud with specificity, these allegations are not properly before the Court. How-

and plaintiff's theory that a breach of the lease had caused the leased properties to revert to CC & O, thus changing the value of the exchange to the parties. Before considering those allegations, the Court considers the allegations more directly related to the exchange and the proxy materials themselves. In each instance, plaintiff alleges that defendants failed to disclose the matters set forth *infra*. The asserted misconduct lies in the failure to disclose the matters, not in the matters themselves. Plaintiff has not alleged that any statements amounted to affirmative misrepresentations, but only that defendants failed to disclose.

## A. *Exchange Transaction Allegations*

■ Plaintiff alleges without elaboration that defendants reaped undisclosed profit from the exchange and transacted it for their self-interest. Similarly, he alleges that defendant C. Hayden Edwards "had a conflict of interest in CSX." Defendants respond that the proxy materials fully disclosed their respective interests in the transaction, including their stock holdings, salaries, and corporate positions. Plaintiff has come forward with no evidence to suggest any further interest or potential profit that should have been disclosed. The Court finds no deficiency in the disclosure.

■ Plaintiff also alleges that defendants failed to disclose that the transaction had no valid business purpose. There are myriad obstacles to holding defendants liable based on this contention; perhaps the simplest is the most obvious, that defendants cannot be liable for not disclosing that which they could not possibly know. Under

even the scienter standard most favorable to plaintiff, defendants can only be liable for not disclosing that which they should have known.[6]

The amended complaint further alleges that defendants wrongfully and indefinitely delayed CC & O's annual shareholder meeting so that they could first accomplish the exchange. Defendants sent out a notice on April 28, 1982 outlining the proposed exchange and noting that the annual meeting would be delayed. Such a delay was permissible under the CC & O bylaws, and plaintiff has come forward with nothing but his conclusory allegations to suggest the delay was wrongful.

■ It is not clear to the Court what fault plaintiff finds in a CC & O stock transaction of which he also complains. At some time subsequent to the May 7, 1982 record date for establishing voting rights, Seaboard sold its holdings of CC & O stock to Merrill Lynch, Pierce, Fenner & Smith, Inc. and granted an irrevocable proxy to vote the shares. Accordingly, Merrill Lynch was able to vote on the transaction, pursuant to the proxy, even though it had not been a shareholder as of the record date. The proxy materials disclosed that Seaboard intended to sell its stock and the right to vote on the exchange. The Court perceives no material omission in the disclosure concerning this ordinary, regular sale.

■ Plaintiff apparently misunderstands the nature of another incident he contends defendants should have disclosed. On May 16, 1979, the Norfolk & Western Railway

---

ever, the Court disposes of these additional allegations, as well as those in the amended complaint, in the interest of concluding this action. Having now allowed plaintiff to amend his complaint and having considered all the further allegations in this affidavit, the Court will be most reluctant to grant leave to further amend, should plaintiff seek to do so.

**6.** The term "scienter" has taken on so many meanings in the securities context as to become nearly useless. *See* 3A A. Bromberg & L. Lowenfels, *Securities Fraud & Commodities Fraud* § 8.4 (503) (1982). The Court uses the term as

a generic reference to whatever state of mind is required for liability; like *mens rea* in the criminal context, the term does not here refer to any particular state of mind. The scienter standard applicable to plaintiff's various theories is open to dispute, perhaps depending on the nature of the relief sought. But the standard most favorable to plaintiff that could possibly apply is negligence: that defendants in the exercise of reasonable care should have known of the omitted information. *See generally id.* §§ 8.4(430)–(434) (§ 14(a) claims); *id.* § 8.4(501) *et seq.* (§ 10(b) claims).

Co. indicated its interest [7] in acquiring from CSX (through its subsidiaries) the rights and interests CSX held in CC & O, "including its leasehold interest in the CC & O." Norfolk & Western later abandoned this project. Plaintiff apparently interprets this offer as a competing offer to buy the lease from CC & O. The fact is that CC & O did not own the lease; all CC & O had to sell was its reversionary interest in the property following the 999-year lease. CSX was the owner of that which Norfolk & Western wanted to buy. There was no reason to disclose to CC & O shareholders that a third party had evidenced an interest in acquiring some of the property of the company that proposed to acquire CC & O. The Court concludes the undisclosed information could not have been material to a reasonable shareholder voting on the exchange.

The remaining allegation not related to the lease concerns a report by Printon, Kane Research, Inc. that was included in the proxy materials. Printon, Kane apparently specializes in analyzing railroads and their securities. The parties have stipulated that in January 1982, CC & O "employed" Printon, Kane to make a financial evaluation of CC & O and of any acquisition offers that might be received from CSX. The proxy materials state that Printon, Kane "was retained by CC & O" to make

the financial evaluations. The materials included a letter stating that Printon, Kane was of the opinion that the exchange would be fair to CC & O stockholders.

Plaintiff has made various attacks on the basis for the Printon, Kane fairness opinion and the methodology of its analysis.[8] The Court considers none of these attacks to be of merit; the opinion reveals the basis on which it was made, and plaintiff's disagreement with the opinion does not affect the completeness of the disclosure. Plaintiff, does, however, raise one objection that may be of substance. Plaintiff contends that CSX ultimately paid for the services of Printon, Kane in September of 1982.[9]

■ The Court cannot determine on the present record the materiality *vel non* this allegation. Plaintiff may, for example, be able to show that Printon, Kane knew CSX would be paying for its services at the time Printon, Kane rendered its opinion. If so, a reasonable shareholder might well have considered this understanding with Printon, Kane to be important information in evaluating the weight to be given to Printon, Kane's opinion.[10] Plaintiff has not yet established the factual setting required to establish materiality, nor have the defendants yet produced evidence that would ren-

---

**7.** Norfolk & Western's indication of interest took the form of an "Inconsistent Application" to the Interstate Commerce Commission, providing an alternative to the application for authority to unite under common control filed by Chessie System, Inc., Seaboard Coast Line Industries, Inc., and CSX Corporation.

**8.** During the time since the argument on the instant motions, plaintiff has filed a motion for leave to file a report evaluating the accuracy of the Printon, Kane opinion; defendants oppose this motion. The Court has examined the proposed exhibit to the extent of ascertaining its purpose. As the Court concludes the basis for the Printon, Kane opinion was fairly disclosed, this exhibit is not relevant to the only basis on which the Court is allowing plaintiff to attack the Printon, Kane opinion. Thus, while the Court will grant plaintiff's motion, it will not consider the report during any further proceedings.

**9.** Defendants apparently do not contest the contention that CSX ultimately paid Printon, Kane, though the parties' stipulation that CC &

O "employed" Printon, Kane does imply that CC & O paid for the services. There may still be an issue regarding who paid for the services.

Defendants assert that the fact that CSX would be paying Printon, Kane was adequately disclosed by the statement in the proxy materials that CSX would be bearing the cost of soliciting proxies and all other costs of the exchange. The Court does not consider this disclosure on page 8 of the proxy statement to be adequate to overcome the inference created by the declaration on page 11 of the proxy statement that Printon, Kane had been "retained by" CC & O. A reasonable shareholder could easily take "retained by" to mean "paid by" and assume that CC & O paid for Printon, Kane's services.

**10.** The Court does not intimate any opinion as to whether or not CSX could or did influence the conclusions Printon, Kane reached if CSX did pay for the services.

der the allegation immaterial. The Court will allow the parties to submit supplemental briefing and documentation in a further effort to dispose of this allegation by summary judgment.

## B. *Lease-Related Allegations*

Plaintiff has alleged several ways in which he says the 1924 lease, to which the Court has referred, *supra,* was breached. For the information concerning these incidents or conditions to be material, they must have in fact constituted breaches of the lease.[11] Additionally, for this information to be material, the result of any breach must be as plaintiff alleges: that the leased property reverted to CC & O and that the value of such property far exceeded the value of the lease, so that CSX acquired something of far greater value than was disclosed. If plaintiff can establish each of these elements necessary for materiality, he then may be able to establish also his allegation that what CSX was offering in the exchange amounted to inadequate consideration in light of the value of those underlying assets which CSX was acquiring.

■ On the present record, plaintiff has not established any breach of the lease as alleged. He is not entitled to summary judgment in this regard. To determine whether defendants are entitled to summary judgment, the Court must determine whether defendants have, on their part, shown the alleged incidents or conditions did not, as a matter of law, constitute breaches of the lease. As to most of the allegations, the defendants have made the necessary showing.

The 1924 lease required approval of the Interstate Commerce Commission (ICC). In giving its approval, the ICC imposed several conditions, including that the defendants establish and maintain a separate organization for the leased properties. Plaintiff alleges that defendants have not

satisfied this condition and that failure to satisfy it constitutes breach of the lease. The Court need not resolve the former contention because plaintiff has provided no support under the terms of the lease or under Virginia law for the latter contention. If the defendants have failed to comply with an ICC directive, it does not appear that plaintiff has standing to complain of the failure. Regardless, the terms of the ICC approval were not incorporated into the lease; the lease merely recites that the ICC did approve it. The Court concludes that proving a failure to satisfy the condition of the ICC approval would not establish a breach of the lease.

Similarly, plaintiff has alleged that the defendants should have disclosed they intended to carry out the exchange in such a way as to circumvent the need for ICC approval of the exchange. Assuming, without deciding, that plaintiff has standing to raise this claim, the record fails to support it in any manner. Defendants, on the other hand, have established that they sought and received ICC approval of the exchange, and the proxy materials disclosed that they would do so.

Plaintiff has suggested, without elucidation of his theory, that it was a breach of the lease for Seaboard to hold stock in CC & O. As discussed *supra,* the fact of Seaboard's owning the stock was disclosed in the proxy materials. The Court cannot discern any breach of the lease involved in such ownership.

■ The remaining alleged breaches of the lease involve a subsidiary of CC & O: Holston Corporation, later renamed Holston Land Company. The stock of Holston was among the assets covered by the lease. Holston has over the years owned various tracts of land in the Southeast. In 1979, internal audits of the Clinchfield Railroad, the company organized to operate the

---

**11.** If plaintiff does establish the materiality of an allegation by showing it constituted a breach of the lease, he will again face the scienter issue. In further proceedings under the breach-of-lease theory, the parties must address themselves to whether in proving scienter plaintiff need show only that defendants knew or should have known of the incidents or conditions constituting breach, or he must show also that defendants knew or should have known that such incidents or conditions did in fact constitute breach.

leased properties, revealed that certain Clinchfield officials apparently had defrauded the company of money and property, including Holston property. These officials evidently were convicted and incarcerated, and the property was recovered in civil actions. Plaintiff contends that the acts of these officials constituted a breach of the lease. Defendants for their part contend that the lease was not breached, or if there was in fact a breach, it was cured when the property was reconveyed to the company.

The Court, on the present record, cannot determine whether there had or had not been a breach of lease; and if there had been a breach, the Court has not been supplied with authority warranting a conclusion that any such breach was curable. For one thing, plaintiff has not established that the acts of the defaulting officials can be attributed to the defendants, or any of them, such that they could be liable. In short, this issue remains unresolved.

The Court can, however, deal with a related allegation. The CSX subsidiaries, at the time of defalcation, possessed a comprehensive crime policy covering losses caused by the misappropriations of employees. The subsidiaries recovered $1.75 million under this policy as a result of the misappropriations by the Clinchfield officials. Plaintiff has alleged without support that CC & O was entitled to part of this recovery. Defendants have established that CC & O was not a beneficiary under the policy. The Court is satisfied that this allegation is without merit, and it will be dismissed.

Among the properties owned by Holston was Drum Island in Charleston, South Carolina. The parties have stipulated that as of May 20, 1982, when the proxy materials were mailed, a condemnation proceeding was pending against the Drum Island property. The proxy materials did not mention the condemnation proceeding. Defendants contend that this information was not material because any condemnation award would go to the lessees, who would not have to account for it until the 999-year lease ended. The Court's somewhat limited examination of South Carolina landlord/tenant law indicates that defendants are incorrect in their premise, but correct in their conclusion that the information was not material.

■ Under South Carolina law, the condemnation award probably would be apportioned between lessor and lessee according to the amount of time involved in the lease. *See, e.g., Jones v. Rosaman,* 123 S.C. 340, 345, 116 S.E. 193, 195 (1923) (Cothran, J., concurring); *Northwestern Railroad Co. v. Colclough,* 89 S.C. 555, 558–60, 72 S.E. 494, 495–96 (1911). The contemplated award would thus be apportioned between the lessee, for the period until the 999-year lease ends, and the lessor, for the remainder. The record indicates some dispute as to the value of the property. But the Court can judicially notice the economic reality that whatever the value of the property, the amount of the value that can be attributed to the period following the year 2922[12] must be miniscule indeed.

■ Plaintiff's theory of materiality evidently is that if the condemnation proceedings had been completed before the exchange, the award would have given CC & O an additional current asset, along with the lease, so that CSX should have had to pay more for CC & O. In the Court's view, CC & O's share of the condemnation award would have been so small that it could not have had any meaningful effect on the price CC & O should command. The Court concludes that information concerning the condemnation proceeding was not material.

Finally, the complaint also alleges that the lease was void *ab initio* because CC & O lacked the power under its charter to enter into the lease. The CC & O charter is not before the Court. Nevertheless, the defendants' evidence shows that the lease was approved in 1924 by the CC & O board of

---

**12.** Though the lease was executed in 1924, its term began May 11, 1923, so that it was due to terminate in 2922.

directors and shareholders. Thus, under Virginia law, the *ultra vires* claim plaintiff seeks to raise is not available for two reasons:

First, § 13.1–5, Code of Virginia, 1950, as amended, relating to ultra vires acts of corporations, provides that no act of a corporation shall be invalid by reason of the fact that the corporation was without capacity or power to do such act, and that such lack of capacity or power may be asserted in only three circumstances, none of which applies in this case. Secondly, the consent of the officers, directors and stockholders to the corporate act involved in this case, and the ratification of the act by the long acquiescence therein by the corporation precludes any objection of a lack of power in the corporation to perform the act in the first instance.

*Brewer v. First National Bank of Danville,* 202 Va. 807, 814, 120 S.E.2d 273, 279 (1961) (citations omitted). This allegation, too, will be dismissed.

### IV. *Conclusion*

Two of plaintiff's allegations will survive defendants' motion for summary judgment: that defendants should have disclosed CSX would be paying for the Printon, Kane opinion, and that defendants should have disclosed the acts of misappropriation alleged to constitute breach of the lease. As to all other allegations plaintiff has raised, whether in the amended complaint or elsewhere, the Court finds no genuine issue of material fact and concludes that defendants must prevail as a matter of law. The Court will grant partial summary judgment pursuant to Fed.R.Civ.P. 56(d) and dismiss those allegations.

An appropriate order will issue.